**WENCKER v. RAILROAD COMMISSION OF TEXAS et al.**

No. 9156.

Court of Civil Appeals of Texas. Austin.

April 2, 1941.

Rehearing Denied April 9, 1941.

Harry S. Pollard, of Austin, for appellant.

Gerald C. Mann, Atty. Gen., and James P. Hart, Asst. Atty. Gen., for appellees.

BLAIR, Justice.

This is a Rule 37 case, involving the validity of an order of the Railroad Commission refusing appellant, O. F. Wencker, a permit to drill a first oil well on a 7.8-acre tract of land as an exception to the special spacing rule applicable to the Hawkins oil field in Wood County, where oil was first discovered on December 29, 1940. This spacing rule requires that each oil well be drilled at a distance of 466 feet from any property line and 933 feet from any completed or drilling well. The rule contemplates the drilling of one well to each 20 acres, but provides exceptions for the drilling of wells at closer distances in order to prevent waste or confiscation of property, being the same exceptions provided for in each Rule 37 promulgated by the Railroad Commission. Appellant sought a temporary injunction to enjoin the Commission from interfering with the drilling of the well, which, after notice and hearing, was denied; hence this appeal.

The map or plat attached to the application for the permit shows the ground situation to be as follows:

ins townsite, and in 1926 he acquired the fee title to lots 7 and 8 in said Block 24 of the Hawkins townsite. These eight lots constitute Block 24 depicted on the map at the east end of the 7.8-acre tract in question, containing approximately one acre. In 1929, Slaughter acquired the fee title to a 13.6-acre tract of land. On August 21, 1933, he conveyed the fee title to a right-of-way for public road purposes, containing approximately 5½ acres to the State of Texas. This right-of-way strip as depicted on the map cut the 13.6-acre tract into two tracts, being the 7.8-acre tract to the north and in question here, and the 1-acre tract along the south line of the highway and the north line of the railroad right-of-way as depicted on the map. On May 14, 1938, and before the discovery of oil on December 29, 1940, when the so-called state wide spacing rule applicable to this area provided for regular locations of oil or gas wells at distances of 150 feet from property lines and 300 feet from other wells. Slaughter executed an oil and gas lease to Paul Scott, the lease describing the 13.6-acre tract and excepting therefrom the approximately 5½-

The facts show that in 1925 E. M. Slaughter acquired the fee title to lots 1 to 6, both inclusive, in Block 24 of the Hawk- acre tract theretofore sold by Slaughter to the State for highway purposes. This lease was assigned on October 25, 1938, by Scott

to appellant, O. F. Wencker. On August 13, 1940, Slaughter executed an oil and gas lease to B. F. Phillips covering Block 24 of the Hawkins townsite adjoining the 13.6-acre Slaughter fee tract on its east end as depicted on the map. On November 14, 1940, this lease was assigned by B. F. Phillips to B. F. Phillips, Jr., whose application for four wells thereon was pending before the Commission when the application of appellant for the permit in question was heard and denied. Appellant did not know that Slaughter owned Block 24 until his application for the permit in suit was filed. On December 19, 1940, appellant applied for a permit to drill a first well upon his 7.8-acre leasehold estate, the well to be located at a point 330 feet east of the west line and midway between the north and south lines thereof, as depicted on the attached map. After due notice a hearing of this application was held by the Examiner for the Railroad Commission, on January 4, 1941, and thereafter, on January 27, 1941, the Commission entered its order denying this permit, stating therein, "that sufficient reason does not exist for the granting of such exception." At the hearing, however, the Humble Oil & Refining Company appeared by their attorney and protested the granting of the permit.

The report of the Commission's Examiner who heard the application showed that Humble objected upon the ground that the 7.8-acre tract could not be considered as a separate tract, because it was a part of the original Slaughter fee tract of 13.6 acres from which it was by oil leases voluntarily subdivided from Block 24; and upon further grounds, as follows: "Humble makes the contention that the 7.8 acres here involved and the 1 acre on which hearing was postponed must be considered together, particularly since it is their contention that according to numerous cases although the state bought the fee to the highway strip they cannot drill thereon. They contend that there is no showing made of any necessity for spacing this well 330 feet from the west line particularly since the drainage from the Rotondi well could be more effectively prevented by a well in the center than by the proposed location and that there is now no waste taking place. They pointed out that there is now pending an application by B. F. Phillips for 4 wells on the two small lots owned by Slaughter to the east and that if the wells are not spaced carefully in the Hawkins townsite it will result in a situation like that in Kilgore."

The Examiner ruled that the 7.8-acre tract and the 1-acre tract were separate tracts and need not be considered together, although appellant offered to have his pending application for a well on the 1-acre tract located at a point 330 feet from its east line as depicted on the map passed upon at the time, to which Humble objected on the ground that adjacent property owners to the east did not have notice of the hearing. Counsel for appellant suggested that he was informed that Humble owned said property and that counsel appearing for Humble could so stipulate, which he apparently refused to do, and the Examiner ruled that the hearing of the application on the 1-acre tract be postponed. He further ruled that under the state wide rule of 150-300 feet existing at the time of the execution of the oil leases to Scott, and Scott to appellant, and Slaughter to Phillips, the 7.8-acre tract was capable of being developed without an exception, and proceeded with the hearing upon that theory.

The three controlling questions presented for determination are as follows:

1. Did the segregation of the 7.8-acre Slaughter tract from the Slaughter 1-acre tract, by warranty deed conveying the fee title to the State for highway purposes in 1933, nearly eight years prior to the discovery of oil or gas in the Hawkins field, constitute a voluntary segregation in violation of the state wide Rule 37 then applicable to the area?

2. Is appellant entitled as a matter of law to a permit to drill a first well on his 7.8-acre tract, considered as a separate tract from Block 24, which was subdivided from the Slaughter fee tract of about 14 acres by the oil and gas leases from Slaughter to Scott and from Slaughter to Phillips as above detailed?

3. Did the Commission act unreasonably and arbitrarily in refusing the permit to drill the well on the 7.8-acre tract at the point requested by appellant?

It is not controverted that the State acquired the fee title to the approximately 5½-acre tract for highway purposes in 1933, nearly eight years prior to the discovery of oil in that area or territory. Nor is there any contention that the sale of the land for highway purposes was made in order to circumvent the provisions of any oil

well spacing rule then in existence. In consequence, Question "1" must be answered in the negative under the several decisions holding that the "voluntary subdivision" rule as announced by the courts and as later promulgated by the Commission by its rule of May 29, 1934, is not applicable where a tract of land is subdivided by mere fee conveyance from a larger tract prior to the discovery of oil in the area or territory where the land is situated. Shell Pet. Corp. v. Railroad Commission, Tex.Civ.App., 116 S.W.2d 439, error dismissed; Nash v. Shell Pet. Corp., Tex.Civ.App., 120 S.W.2d 522, error dismissed; Shell Pet. Corp. v. Railroad Commission, Tex.Civ.App., 120 S.W.2d 526, error dismissed.

Nor does the fact that the two tracts were created by conveyance for highway purposes of the fee to the tract which divides them, affect the right of the owner of each segregated tract to develop it for oil, or affect the right of the same owner of both tracts to develop them separately. Such has been the uniform rule applied by the courts in the cases last cited to the conveyance of the fee to the tract which divides or segregates two or more tracts of land as between individuals. It is true as held in the case of Boone v. Clark, Tex.Civ. App., 214 S.W. 607, error refused, that a commissioners' court does not have the authority to create a nuisance by executing an oil lease to drill a well on a public road even though the fee thereto is in the county or state; but this case is also authority for the proposition that the adjacent landowner does have the right to develop his land for oil. We know of no authority which would require an owner of land adjacent to a public road to so drill his oil well that others not adjacent will share in the oil underneath the road; nor do we know of any rule which would require such adjacent owner to compensate the State for oil that his well might drain from beneath the public road. Where the State owns the fee title to a public road it may abandon same and sell the land as provided by Art. 6673a, Vernon's Statutes, Acts 1931, 42nd Leg., p. 170, Ch. 99; but it is manifest that the adjacent owner of land does not have to wait until that is done before he may develop his land for oil. His right to develop was summarized and stated in Dailey v. Railroad Commission, Tex.Civ.App., 133 S.W.2d 219, 221, error refused, as

follows: "It has been the uniform holding of this court that the inherent right of the landowner to recover the oil beneath his land is the primary basis for the exception to prevent confiscation or to protect vested rights, and that such right is deemed to outweigh other consideration for which the rule was promulgated. The Supreme Court so construed the rule and its exceptions in the case of Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107, holding that the exception to protect vested rights must be construed in connection with the rules of property in oil and gas; that each owner must have a fair opportunity to recover his oil through wells located on his land; that the exercise of the police power under Rule 37 and its exceptions does not change the rule of property, but merely regulates and controls the manner of its use and enjoyment; and that the primary rule of ownership of property is still operative. And both the courts and the Commission, until the instant case, have uniformly held that since the Commission made the exception to prevent confiscation or to protect vested rights, it must apply such exception where a person owns a tract of land too small or irregular in shape to be drilled under the general spacing provision of the rule, no question of voluntary subdivision arising; and to permit the drilling of at least one well, which the landowner is entitled to drill as a matter of law."

We are of the view that appellant had the right to a first well on his 7.8-acre tract, considered as a separate tract from Block 24, although said Block 24 was subdivided from it at a time when Block 24 could not itself be developed as a separate tract, or when considered as a part of the 7.8-acre contiguous tract it might not under the facts be entitled to a well. Appellant did not know at the time he purchased his leasehold estate that Slaughter owned the adjacent Block 24. At the time he purchased the lease oil had not been discovered in the Hawkins field and the state wide rule then applicable to the area provided for the drilling of wells at distances of 150 feet from property lines and 300 feet from other wells, the rule contemplating one well to a little more than two acres. The tract in question contained 7.8 acres. Its average width was approximately 260 feet and its average length was in excess of 1,600 feet.

■ The courts have held that a tract of land of such size and shape as to be capable of development for oil without the necessity of invoking an exception to the spacing rule, may be segregated from another tract, and that such segregation does not constitute a voluntary segregation in violation of Rule 37. Gulf Land Co. v. Atlantic Ref. Co., 134 Tex. 59, 131 S.W.2d 73, 75; Falvey v. Simms Oil Co., Tex.Civ. App., 92 S.W.2d 292.

Moreover, in the case of Humble Oil & Refining Co. v. Railroad Commission, Tex. Civ.App., 94 S.W.2d 1197, it is held that where the Commission amended its spacing rule after a tract of land had been segregated, so as to require increased spacing distances, the right of development is determinable by the provisions of the spacing rule existing prior to the amendment, since to apply the amended rule would amount to confiscation of vested property rights legally acquired in good faith and in keeping with the spacing rule applicable at the time. And the court further held that where a tract of land has been voluntarily segregated, but has such size and shape as to substantially and reasonably comply with the regular spacing distances provided for by the applicable rule, such segregation does not constitute a voluntary subdivision in violation of Rule 37, although it is necessary to invoke the provisions for an exception in order to drill a well thereon.

Our above conclusions require that Question "2" be answered in the affirmative, because the facts show that the spacing rule in effect at the time provided for drilling of wells at distances of 150 feet from property lines and 300 feet from other wells, the rule contemplating one well on a little more than two acres; and that appellant's tract containing 7.8 acres with an average width of about 260 feet and an average length of about 1,600 feet, is of such size and shape that it could be developed in substantial or reasonable compliance with the applicable rule, although it is necessary to invoke the provisions for an exception in order to do so.

■ Question "3" involves the reasonableness of the action of the Commission in refusing the permit to drill the well on the 7.8-acre tract at the point requested by appellant. The answer thereto also involves the matter of whether the court should set aside the order denying the permit, and by temporary injunction permit appellant pending final hearing to drill the well at the location requested by him. We have reached the conclusion that the court has no such power, unless the evidence shows that appellant is entitled to a well at the requested location as a matter of law. The Examiner's report to the Commission showed conflict in the evidence or conflict of opinion as to the proper place to locate the well. This conclusion is predicated upon the rule that the matter of the location of an oil well drilled under exception to the general spacing provisions on a tract of land is a question left to the sound discretion of the Commission; and that it was not conclusively shown on the hearing for the temporary injunction that appellant was entitled to a well at the point requested. Upon this ground alone the judgment of the trial court denying the temporary injunction must be affirmed. In view of the trial on the merits we hold that if the evidence shows that the Commission acted unreasonably and arbitrarily in refusing the permit to drill the well at the point requested, then the Commission's order denying the permit should be set aside and it should be enjoined from interfering with the drilling of the well. If the right to the requested location is not established, then the trial court should set aside the order denying the permit to drill a well on the 7.8-acre tract, giving appellant the right to have the Commission fix the point at which the well is to be drilled.

Judgment of the trial court is affirmed, with instructions.

Affirmed, with instructions.