## SUN OIL CO. et al. v. BURFORD et al.
### No. 9962.

Circuit Court of Appeals, Fifth Circuit.

Dec. 29, 1941.

Rehearing Denied Feb. 2, 1942.

J. B. Robertson and J. A. Rauhut, both of Austin, Tex., for appellants.

James P. Hart, Ed. Roy Simmons, and F. L. Kuykendall, all of Austin, Tex., for appellees.

Before HOLMES and McCORD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Sun Oil Company filed its complaint against the Railroad Commission of Texas, G. E. Burford, and X. Y. Z. Oil Company, seeking the cancellation of a permit issued to Burford for the drilling of four wells upon a tract of 2.33 acres of land in the East Texas oil fields, having dimensions of approximately 49 feet East and West by 2.100 feet North and South. In the alternative, it sought to enjoin the operation of such wells until the Commission, after notice and hearing, should fix the allowable to prevent this small tract from getting more than its full share of the oil in competition with complainant's tract of fifty acres on the West. Magnolia Petroleum Company owning fifty acres adjoining defendant's tract on the East, intervened and joined in the prayer of plaintiff for relief.

Jurisdiction was alleged to exist both because of diversity of citizenship, and the presence of a Federal question.

The petition charged that the Commission has, in effect, disregarded and violated its own rules and regulations in issuing the permit, and that the defendants are taking the oil in such quantities as to drain the lands of complainants and intervenors, resulting in gross discrimination, and the taking of appellants' property in violation of Texas laws and constitution, and the Fourteenth Amendment to the Federal Constitution.

The court below, while maintaining its jurisdiction, decided that it was controlled by the decisions of the United States Supreme Court in the two Rowan & Nichols Oil Company cases, Railroad Comm. of Texas v. Rowan & Nichols Oil Co., 310 U. S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368, and Id., 311 U.S. 570, 61 S.Ct. 343, 85 L.Ed. 358, which it construed to require in "these conservation cases, the parties should be relegated to the State courts." For this reason, the complaint and intervention were dismissed.

In those cases, jurisdiction was invoked solely upon the ground of a Federal question, since there was no diversity of citizenship. In the first, at page 580 of 310 U.S., 60 S.Ct. 1021, 61 S.Ct. at page 66, 84 L.Ed. 1368, the court said that "the only question open to a federal tribunal is whether the state action complained of has transgressed whatever restrictions the vague contours of the Due Process Clause may place upon the exercise of the state's regulatory power." But upon further consideration, this expression was stricken, and it was said that "the presence of a federal question may also open up state issues * * *." This was, no doubt, because of the uniformity of past jurisprudence that

once a Federal Court takes jurisdiction of a case, it will decide all issues, including those under State law. In the amendment to that opinion (311 U.S. 614, 61 S.Ct. 66, 85 L.Ed. 390), it was said that the Texas courts had not determined whether "independent judgment" could be exercised by the courts in determining the reasonableness of the Commission's action; nevertheless, it was felt that the State decisions otherwise indicated that the "standard of 'reasonable basis' under the statute opens up the same range of inquiry as the respondent in effect asserted to exist in his claims under the Due Process Clause"; and since it had been found in the original opinion that the showing made in attempting to establish a lack of due process was insufficient, the court would not pursue the matter further "under the guise of enforcing the State statute." That seems to be the reasonable interpretation of what the court meant. The language used was: "What ought not to be done by the Federal courts when the Due Process Clause is invoked ought not to be attempted by these courts under the guise of enforcing a state statute." In any event, it reversed the lower court's finding of discrimination, violation of the Commission's rules, etc., and reserved the right of complainants there to test the matter in the State courts. Had the decision remained as it was originally handed down, there might be some basis for a distinction in the present case because of the diversity of citizenship, but since that ground was withdrawn, we are forced to conclude, as did the Judge below, that if we find no violation of the Due Process Clause under the Federal Constitution, then we should not attempt to decide the reasonableness of the action of the Railroad Commission.

Ordinarily, where there is diversity of citizenship, and a cause of action exists under State law, the Federal court can and should exercise the same jurisdiction as would a State court when dealing with the identical circumstances. Both the Federal constitution, art. 3, § 2, and the Act of Congress, 28 U.S.C.A. § 41, making it effective give citizens of another State the right to resort to the Federal courts and when this is done, those courts usually decide all of the issues involved, whether they be Federal or State. However, in this matter of enforcing the conservation laws of a State with respect to its natural resources, the Supreme Court appears to have set a precedent and made a distinction in which, if not

expressly, at least by implication, they have said all issues other than questions under the Federal Constitution should be relegated to the State court, as was found by the court below.

For more than twenty years, the Railroad Commission of the State of Texas, pursuant to the conservation laws of that State, has conducted investigations and had public hearings in an effort to work out a system for equitably controlling the production of gas and oil in the various fields of that State. After the bringing in of the big East Texas field, special provisions were made to deal with the situation created by its huge production, which, for a time at least, had the effect of demoralizing the oil industry of a good part of the country. These regulations dealt with spacing, quantities to be withdrawn and many other factors, which perhaps would have been unnecessary under normal conditions, but at all times, provision has been made for exceptions to protect what was first termed "vested rights", and later to prevent "confiscation". It was evidently considered that in changing the size of tracts to be drilled, the spacing of wells with respect to each other and from property lines, and restrictions upon the quantity to be allowed from each well, some owners or lessees might be denied the right to produce from their lands at all, under general rules applicable to the field. This resulted from the sizes and dimensions of some tracts with respect to ownership and leases. In such cases, the Commission, after investigation and notice to the parties interested, attempted to work out a solution that would not be unfair to either the owner of such tracts or adjoining proprietors. There have been many instances where those affected have differed with or questioned the action of the Commission both as to the facts and law or rules and regulations governing these matters. It is but natural that some mistakes would be made, but as pointed out by the Supreme Court in the Rowan & Nichols cases, these were matters which a body like the Commission with the assistance of its experts, the use of public hearings at which members of the industry could appear and be heard with suggestions for better regulations, was more qualified to work out than a court of justice. In the absence of a clear showing of confiscation or lack of Due Process, such bodies should be left, at least by the Federal courts, to deal with the situation, unless and until the court of last resort of the State has

decided that an "independent judgment" as to reasonableness should be exercised by the courts.

■ .There are many elements in the present case, such as the fact that the 2.33 acres involved here was separated or divided from the larger tract before the adoption of special provisions for the East Texas field, in August, 1931; one or more of the wells drilled proved to be a dry hole; the encroachment of water from the Southwest has caused the oil under the lands involved to be replenished after withdrawals, and the complainants have had a head start of nearly ten years in withdrawing oil, undoubtedly including that under the property of defendants. The Commission has found that these and other considerations were sufficient to warrant the exception made in the present case. There is no charge of fraud or wilful abuse of power. The Commission has had at least three hearings upon this particular matter, at which the interested parties have appeared and there has been no lack of opportunity for presenting the contentions of the parties. Whether the State court eventually will hold, as contended by the appellees, that in a judicial review of the Commission's action, the common law rule of substantial evidence applicable to a jury's verdict, shall prevail, of course, remains to be seen. Suffice it to say that we do not find in this case conditions amounting to a denial of Due Process or other violations of the Federal Constitution.

The judgment appealed from is affirmed.