**BURFORD et al. v. SUN OIL CO. et al.**

**No. 9447.**

Court of Civil Appeals of Texas. Austin.

Nov. 22, 1944.

Rehearing Denied Feb. 14, 1945.

R. T. Thornton, of Ft. Worth, Hart & Brown and James P. Hart, all of Austin, for appellants G. E. Burford and others.

Grover Sellers, Atty. Gen., and E. R. Simmons, and W. P. Watts, Asst. Attys. Gen., for appellant Railroad Commission of Texas.

Walace Hawkins, of Dallas, and Dan Moody and J. B. Robertson, both of Austin, for appellee Magnolia Petroleum Co.

J. W. Timmins and Martin A. Row, both of Dallas, and Powell, Wirtz, Rauhut, & Gideon, and J. A. Rauhut, all of Austin, for appellee Sun Oil Co.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is from a final judgment cancelling two orders of the Commission granting permits to drill four wells on a long (about 2131 feet, north-south), narrow (about 49 feet, east-

west) tract of 2.33 acres in the East Texas Oil Field, as exceptions to the spacing rule; but providing, however, that the judgment was "without prejudice to a new application" to the Commission to drill one well on tract. The suit was by the oil companies, Sun (Sun Oil Company) and Magnolia (Magnolia Petroleum Company), owners of leases located respectively west and east of the 2.33-acre strip, against Burford et al. (the permittees) and the Commission (Railroad Commission of Texas). All defendants have appealed. The oil companies have cross-assigned error upon that portion of the judgment authorizing a new application to the Commission for one well on the strip; and seek reformation of the judgment by elimination of that portion.

The two orders involved were dated respectively March 25 and June 2, 1939, the first authorizing one well and the second three additional wells.

The following general statement is quoted from appellants' brief:

"This litigation has had a varied course through the state and federal courts. After the first permit, which is attacked in this suit, was granted, the oil companies filed a suit in the state courts to cancel the permit. This cause remained on the docket of the state court until after the second permit was issued and the motion for rehearing was overruled by the Railroad Commission on July 10, 1939. Ten days later, on July 20, 1939, the oil companies dismissed their suit in the state court and refiled their case in the federal court. This case was tried in the Federal District Court and later appealed to the United States Circuit Court of Appeals and to the United States Supreme Court. See Sun Oil Co. v. Burford, 5 Cir., 124 F.2d 467; 5 Cir., 130 F.2d 10; 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424. Judgment was finally entered on the mandate of the United States Supreme Court on July 21, 1943, and on the next day the oil companies filed this their second suit in the state court.

"The principal questions which are raised by this appeal are (1) whether the appellees were not barred from maintaining their second suit in the state courts by reason of limitations, laches, or election of remedies, since their second suit in the state court was filed more than four years after their right of action accrued; (2) whether the validity of the present permit is not made res judicata by reason of a former judgment of the District Court of Travis County, Texas, relating to a permit issued in October, 1934, to Burford's predecessor in title; (3) whether the Railroad Commission had jurisdiction to consider granting the present permit because of the pendency of a suit to set aside another permit, granted in February, 1934, to Burford's predecessor in title; (4) whether the strip is entitled to be considered as a separate strip in granting an exception to Rule 37 to prevent confiscation; (5) whether the Railroad Commission abused its discretion in granting permits to drill four wells, instead of only one well; and (6) whether the court erred in admitting certain testimony of the witness for the Sun Oil Company as to what a report by a firm of engineers showed."

We have reached the conclusions that appellees are not barred from maintaining this suit (question 1) and that the strip is not entitled to be considered as a separate tract (question 4). These conclusions are decisive of the appeal, and render unnecessary a consideration of questions (2), (3), (5) and (6). We will, however, make a brief statement regarding questions (2) and (3).

As to these questions: February 1, 1934, permit was granted to drill one well on the strip. May 30, 1934, suit was filed to cancel this permit on the ground (inter alia) that it was granted without notice and hearing. The same day an order was made temporarily (until hearing on application for temporary injunction, set for July 17, 1934) restraining drilling under the permit. No other action was taken in the case until November 29, 1939, when final judgment was rendered decreeing the permit void for want of notice and hearing and cancelling it on that ground; but "without prejudice" to apply for another permit. Meantime (July 30, 1934) verified application was made to the Commission for a hearing on the original application, it being recited therein that the former order had been set aside because of lack of notice and hearing. Attached to this application was an alleged copy of a judgment decreeing the permit invalid for want of notice and hearing, temporarily enjoining drilling under the permit, and authorizing application to the Commission for a hearing upon the application. Judgment, according to this copy, does not appear to have been entered. It was dated

July 17, 1934, the date the application for temporary injunction was set for hearing and the restraining order expired. Appellants contend (and we think correctly) that this action showed abandonment of the original permit, and reinvested the Commission with jurisdiction over the application; the original order being (concededly by all parties) void for want of notice and hearing. October 11, 1934, a new permit was granted after notice and hearing. This permit was cancelled by court decree January 31, 1935. Appellees contend that this judgment was res judicata of the right to drill on the strip. Appellants' contention to the contrary is predicated upon assertions that the issues and parties were different in the prior suit, and further that there had been a change of conditions. We shall not burden this opinion with a detailed statement of these issues. If appellees' contention were sustained, the same result would be reached as that under our above holdings. We are assuming (arguendo) that the plea of res judicata was not good.

■ Considering question (1) we will first state the several contentions of the parties. Appellants contend that appellees' suit is barred under the doctrine of election of remedies by their first filing suit in the state court and thereafter dismissing that suit and filing suit in the federal court. Clearly this was merely a change in choice of courts, in each of which the same remedies were sought, and since the former suit was dismissed and not prosecuted to judgment there was no election of remedies. Railroad Commission v. Shell Oil Co., Tex.Civ.App., 170 S.W.2d 568. See also 15 Tex.Jur., pp. 830–832, § 8.

■ Nor does the doctrine of laches apply. The delay in filing the instant suit was occasioned by the pendency of the federal court suit. It may be conceded that appellees had the right to prosecute suits simultaneously in both courts. But they were not required to do so; and their failure to do so, conceding their good faith in bringing the federal court suit (which is not questioned), did not operate prejudicially upon their rights. Moreover there was no showing of prejudice to appellants by reason of delay. Railroad Commission v. Shell Oil Co., Tex. Civ.App., 165 S.W.2d 502, error refused. We should add this further comment in this connection. Federal court jurisdiction was predicated upon both infringement of the due process clause of the Federal Constitution and diversity of citizenship. Federal jurisdiction in these regards is conferred by the Congress. The rights of litigants thus conferred are valuable rights; and this regardless of whether ultimately there eventuate from the federal court choice an advantage to the one making the choice. If, in the exercise of good faith, the choice be in favor of federal jurisdiction no penalty should attach to the mere making of the choice, and the exercise of an honest judgment that one is availing himself of rights to which he is entitled and which (supposedly at least) will work to his advantage.

Upon the issue of limitations: Appellees contend that since this is a special statutory proceeding the general statutes of limitations do not apply. They further contend that if the statutes do apply, limitation was tolled under Art. 5539a, Vernon's Ann.Civ.St. Appellants contend that this article does not apply because (they assert) the federal court case was not dismissed "because of a want of jurisdiction."

■ As to appellees' first contention: it is true that this "is a special statutory action to enforce a right which exists only by statute, and not under the Constitution, or at common law." Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364. It is also true that the courts generally hold that where there is unreasonable delay, which works to the prejudice of the affected party, the right to maintain the suit is barred under the principles governing laches. See Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Midas Oil Co. v. Stanolind Oil & Gas Co., Tex.Sup., 179 S.W.2d 243; Id., Tex.Civ.App., 123 S.W.2d 911 (error dis.); Red Arrow Freight Lines v. Missouri Pac. F. T. Co., Tex.Civ.App., 166 S.W.2d 747 (error ref.). Appellants rely upon expressions in these opinions to the effect that Art. 6049c, § 8, which creates the right of action "provides no time within which suit to test the validity of the rules, regulations, and orders of the Commission shall be filed." The question of the applicability of general statutes of limitations to such actions was not involved in any of these cases. On the other hand, this court in Texas & N. O. v. Greer, Tex.Civ.App., 117 S.W.2d 148 (error dis.), held that as between private

litigants suits of this character (there under Art. 911b, § 20, Vernon's Ann.Civ.St.) were barred unless brought within four years after the right of action accrued. The question was directly involved, and the particular holding was essential to the decision. Under these circumstances we think the dismissal of application for writ of error (in effect upon the ground of "correct judgment") constituted an approval of our holding. For discussion of this subject, see Humble Oil & Refining Co. v. State, Tex.Civ.App., 158 S.W.2d 336 (error ref.).

■ Independently of the effect of the Supreme Court's action, our former holding is authoritative in so far as this court could make it so. And besides we still believe the holding correct; which is embodied in the following quotations [117 S.. W.2d 151]:

"The right of individuals given by statute to appeal from orders of the Commission, whether or not such appeal may in any proper sense be classified as a suit against the state, is governed by general rules of law applicable to other suits or causes of action, at least to the extent that such rules may properly and appropriately be applied. * * *

"It is immaterial whether the Commission could have successfully plead limitation * * *. As between appellants and Greer, the latter's operation under his permit (if invalid) constituted an invasion of appellants' rights which appellants were required to protect by suit within the limitation period. * * *

"They were free during the entire limitation period (unless barred by laches) to have the permit annulled by statutory appeal."

As stated, whether the limitation was tolled during pendency of the federal court suit turns upon the issue whether vel non the final judgment (that of the Supreme Court) was in effect a dismissal "in any way * * * because of a want of jurisdiction of the Trial Court in which such action shall have been filed," within the meaning of Art. 5539a. In none of the reported cases construing this article has the particular issue here involved been adjudicated. We do not think it necessary to analyze them. We merely list them: Wood v. B. F. Dittmar Co., Tex. Civ.App., 59 S.W.2d 441; Binge v. Gulf Coast Orchards Co., Tex.Civ.App., 93 S.

W.2d 813; Chalmers v. American Nat. Ins. Co., Tex.Civ.App., 103 S.W.2d 228; Garrett v. Hartford Accident & Indemnity Co., Tex.Civ.App., 107 S.W.2d 726. Art. 5539a reads: "When an action shall be dismissed in any way, or a judgment therein shall be set aside or annulled in a direct proceeding, because of a want of jurisdiction of the Trial Court in which such action shall have been filed, and within sixty (60) days after such dismissal or other disposition becomes final, such action shall be commenced in a Court of Proper Jurisdiction, the period between the date of first filing and that of commencement in the second Court shall not be counted as a part of the period of limitation unless the opposite party shall in abatement show the first filing to have been in intentional disregard of jurisdiction."

This Article was passed by the Regular Session of the 42nd Legislature, 1931 Gen. L. p. 124, as Senate Bill No. 67. The Article was drawn by the Judicial Council and recommended in its Second Annual Report (1930) as its Bill No. 6, page 10. The caption reads: "An Act to extend the period of limitation because of filing of any action in the wrong Court, unless opposite party shows intentional disregard of jurisdiction; and declaring an emergency."

Both the Act and its caption are worded identically with the Council bill, except that the time for refiling in a proper court was changed from 30 days (Council bill) to 60 days (the Act). A memorandum setting forth the objectives of the bill will be found at page 11 of the report.

■ It is manifest that the Act is remedial in its every essence. It should therefore be given a liberal construction with a view of effectuating its manifest objective—relief from penalty of limitation bar to one who has mistakenly brought his action "in the wrong court." See Butler v. Express Pub. Co., Tex.Civ.App., 126 S.W.2d 713. So construed it is clear that the Act was intended to cover every case where the effect of the final judgment or order of the first court was tantamount to a dismissal because the action was mistakenly but in good faith brought in the wrong court. In other words, the effect of the court judgment or order and not its form or the name by which it is called is the determining factor. This is clear from the wording both of the caption and

the body of the Act. It is to be observed that the word "dismissed" does not appear in the caption. The expression "dismissed in any way," in the Act, is clearly meant to be all-inclusive, embracing both voluntary action on the part of the plaintiff and every species or form of order, judgment or decree, which terminates the action if it be because of the fact that the suit was brought in the wrong court. It is in this sense that the expression "dismissed * * * because of a want of jurisdiction" was employed.

A statement of the course of the action in the federal courts, made in the light of this construction of Art. 5539a, follows:

As stated, the Sun case was filed July 20, 1939, in the FDC (Federal District Court) at Austin. Before it was tried the FSC (Federal Supreme Court) handed down its opinions in the R & N cases (Railroad Commission v. Rowan & Nichols Oil Co. opinion in first case, June 31, 1940, 310 U.S. 573, 60 S.Ct. 1021, 84 L. Ed. 1368; modification opinion, October 21, 1940, 311 U.S. 614, 61 S.Ct. 66, 85 L. Ed. 390; opinion in second case, January 6, 1941, 311 U.S. 570, 61 S.Ct. 343, 85 L. Ed. 358). Judgment of dismissal of Sun case in FDC, February 7, 1941. This judgment affirmed by FCCA (Circuit Court of Appeals, 5th Circuit), December 29, 1941 (124 F.2d 467); rehearing denied February 2, 1942; second rehearing granted July 11, 1942, (130 F.2d 10) remanding the cause to FDC for trial on merits (except as to federal question), predicated upon decision in Selby case (Selby Oil & Gas Co. v. Railroad Commission, 5 Cir., 128 F.2d 334), rendered June 30, 1942, by the FCCA. Final judgment on certiorari to the FSC, May 24, 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; rehearing denied June 21, 1943, 320 U.S. 214, 63 S.Ct. 1442, 87 L.Ed. 1851.

The R & N suits involved proration orders governing the East Texas Oil Field. The administration of Texas oil and gas conservation laws had brought on a flood of litigation, a substantial part of which was in the federal courts, some cases reaching the FSC. No little confusion in state and federal holdings resulted. Prior to the R & N decisions this confusion had not served as a deterrent to the exercise of federal jurisdiction. The Justices were divided in these decisions 6 to 3. The majority opinions were by Frankfurter, concurred in by Stone, Black, Reed, Douglas and Murphy, with dissenting opinions by Roberts, concurred in by Hughes (the Chief Justice) and McReynolds. The majority opinion in the first decision gave a résumé of difficulties both legislative and administrative involved in the Texas efforts toward conserving these natural resources, the former it characterized as "as thorny a problem as has challenged the ingenuity and wisdom of legislatures." [310 U.S. 573, 60 S.Ct. 1023] Federal jurisdiction in those suits was predicated alone on assertion of a federal question—infringement of due process. Upon this issue the opinion reads: "Certainly in a domain of knowledge still shifting and growing, and in a field where judgment is therefore necessarily beset by the necessity of inferences bordering on conjecture even for those learned in the art, it would be presumptious for courts, on the basis of conflicting expert testimony, to deem the view of the administrative tribunal, acting under legislative authority, offensive to the Fourteenth Amendment."

The concluding paragraph read: "Except where the jurisdiction rests, as it does not here, on diversity of citizenship, the only question open to a federal tribunal is whether the state action complained of has transgressed whatever restrictions the vague contours of the Due Process Clause may place upon the exercise of the state's regulatory power." 61 S.Ct. 66.

Upon rehearing this last paragraph was deleted and the following substituted: "While the presence of a federal question may also open up state issues, Siler v. Louisville & N. R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753, the claim here founded on Texas law is derived from a statute requiring proration on a 'reasonable basis.' Vernon's Texas Ann.Civ.Stat. art. 6049c, § 7. The Texas decisions, in so far as they have been brought to our attention, do not make clear whether the local courts may exercise an independent judgment on what is 'reasonable.' Compare Brown v. Humble Oil & Refining Co., 126 Tex. 296, 316, 83 S.W.2d 935, 87 S.W.2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393. But, in any event, as we read the Texas cases, the standard of 'reasonable basis' under the statute opens up the same range of inquiry as the respondent in effect asserted to exist in his claim under the Due Process Clause. These latter claims we have found untenable. What

ought not to be done by the federal courts when the Due Process Clause is invoked ought not to be attempted by these courts under the guise of enforcing a state statute. Whether the respondent may still have a remedy in the state courts is for the Texas courts to determine, and is not foreclosed by the denial, on the grounds we have indicated, of the extraordinary relief of an injunction in the federal courts."

Construing this holding, the court, in the second decision said. [311 U.S. 570, 61 S. Ct. 346]: "In denying the petition for rehearing in the earlier cases we held that whatever rights the state statute may afford are to be pursued in the state courts."

The Roberts dissenting opinion is quite brief. Its gist is embodied in the following quotations:

"Although the problem of proration presented technical and difficult questions, and although the Commission was vested with a broad discretion in dealing with them, these facts could not justify the court's abdicating its jurisdiction to test the Commission's order. * * *

"The opinion of this court, in my judgment, announces principles with respect to the review of administrative action challenged under the due process clause directly contrary to those which have been established." Citing Brandeis in Thompson v. Consolidated Gas Utilities Corporation, 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510.

Federal jurisdiction in the Sun (instant) case was predicated both upon federal question and diversity of citizenship. The bill of complaint in the FDC followed the general lines of petitions in Rule 37 cases filed in the state courts under Art. 6049c, § 8. It expressly invoked that Article as authority to bring the suit. The Commission order was alleged to be "unreasonable, discriminatory and unjust in fact in its operation against plaintiff, and is in violation of the conservation laws and rules of the State of Texas applicable to said land and field," adding "and the constitutional rights of plaintiff" for reasons thereinafter particularized. The grounds alleged were the same as those here relied upon in so far as concerns questions arising under Texas law. The prayer was for cancellation of the orders, denial of the right to drill thereunder and for injunctive relief. The FDC decree recited appearance and announcement of ready by all parties, hearing of evidence and argument of counsel, and announcement of the court's opinion "that the issues of law and fact are with the defendants." Whereupon it was decreed that the complaints (those of Sun and Magnolia) "are dismissed." Manifestly this decree upon its face was a dismissal upon trial, with prejudice, and constituted a final adjudication and complete bar to any further litigation of the oil companies' rights under the asserted cause of action. See 17 Am.Jur. p. 93, § 73; p. 95, § 77. The oil companies sought, unsuccessfully, to have the judgment recite that it was without prejudice to refiling suits in Texas state courts "seeking an adjudication of all questions other than those based on alleged violation of their rights" under the 14th amendment to the Federal Constitution. In its findings and conclusions the court held that: (1) it had jurisdiction of the parties and subject matter of the action; (2) the challenged order violated no right of the oil companies under the 14th amendment; and (3) the various matters of state law presented no federal question nor "matters of such merit as to warrant the issuance of an injunction"; in this last connection referring to and quoting from the two opinions in the first R & N decision. Whatever may be the proper construction of the third holding as modifying the prejudicial effect of the dismissal decree, the issue was one involving such substantial doubt as to fully warrant the oil companies in prosecuting an appeal, even though they may have been willing at that time to abandon the federal court, if the clear and unequivocal right to prosecute the action in the state courts upon questions of state law were vouchsafed to them under the decree. We are further of the view that the correctness of the third holding was of sufficiently substantial doubt to warrant appeal from the decree, even were it clearly and unequivocally no impediment to prosecuting a state court action on questions of state law. We regard these issues as unimportant, and state our views thereon only because of the seeming importance given them by the respective parties.

Upon appeal, the first decision of the CCA (District Judge Dawkins writing and Circuit Judges Holmes and McCord concurring) was an affirmance of the FDC decree, the opinion giving the same construction to the R & N decisions as that

of the trial court. The court said [124 F.2d 469]: "In this matter of enforcing the conservation laws of a State with respect to its natural resources, the Supreme Court appears to have set a precedent and made a distinction in which, if not expressly, at least by implication, they have said all issues other than questions under the Federal Constitution should be relegated to the State court, as found by the court below."

The FCCA opinion in the Selby suit (Hutcheson, C. J., writing, Foster, C. J., concurring, and McCord, C. J., dissenting) construed the holding in the R & N opinions to relate only to suits, federal jurisdiction as to which is based solely upon federal questions. The Selby suit (a Rule 37 case) was held to embrace two claims for relief: infringement of rights (1) guaranteed by the Federal Constitution (due process), and (2) created by Texas conservation laws (a statutory suit). As to the latter the parties would be relegated to the State courts, where federal jurisdiction was based alone on a federal question (R & N decisions); but where federal jurisdiction was based upon diversity of citizenship all questions, including those asserted under State law, would be adjudicated in the federal courts.

After the Selby decision the FCCA, upon second motion for rehearing, reversed its former decision as to questions of state law and remanded those issues to the trial court for adjudication. The opinion in the Sun case disagreed with that in the Selby case in the holding that the action embraced two suits, a "constitutional suit" and a "statutory suit," holding [130 F.2d 16]: "We have here only one suit. It is of an equitable nature, and is called a civil action under the Federal Rules of Civil Procedure [28 U.S.C.A. following section 723c.] The same conclusion was reached, and upon substantially the same ground, as in the Selby opinion. These two decisions were rested very largely upon the holding that the decision of the Texas Supreme Court in the Trem Carr case (Railroad Commission v. Shell, 139 Tex. 66, 161 S.W.2d 1022) rendered after the R & N decisions, had clarified the Texas conservation laws; the Selby opinion in this regard reading [128 F.2d 337]: " * * * The Texas decisions are clear that whether the exception to the rule is granted for confiscation or for waste, a litigant in the statutory suit is entitled to

have the independent judgment of the trial court based, not of course upon the evidence offered before the commission,—that is wholly immaterial—, but upon the evidence offered on the trial as to whether the order rests upon a reasonable basis, that is whether it is supported by substantial evidence."

When the Sun decision (a 5 to 4 one) was rendered by the FSC, Stone had succeeded Hughes as Chief Justice and Jackson and Rutledge had succeeded McReynolds and Stone as Associate Justices. The majority opinion was by Black, concurred in by Douglas, Murphy, Jackson and Rutledge. Dissenting opinion was by Frankfurter, concurred in by Stone (C.J.), Roberts and Reed. Douglas wrote a reply opinion to the dissenting one, in which Murphy concurred. The majority opinion states at the outset [319 U.S. 315, 63 S.Ct. 1099]: "There is some argument that the action is an 'appeal' from the State Commission to the federal court since an appeal to a State court can be taken under relevant Texas statutes; but of course the Texas legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction, and the Circuit Court of Appeals in its decision correctly viewed this as a simple proceeding in equity to enjoin the enforcement of the Commission's order."

The issue upon which the decision was rested is thus stated: "Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest'; for it 'is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.'"

The opinion again reviews, and with even more elaboration than that in the opinion in the first R & N decision, problems and questions arising under our conservation laws, and concludes:

"These questions of regulation of the industry by the State administrative agency, whether involving gas or oil prorationing programs or Rule 37 cases, so clearly involve basic problems of Texas

policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them. 'Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, * *. *. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, "exercising a wise discretion", restrain their authority because of "scrupulous regard for the rightful independence of the state governments", and for the smooth working of the federal judiciary * * *. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers.' Railroad Commission v. Pullman Co., supra. 312 U.S. [496], 500, 501, 61 S.Ct. [643], 85 L.Ed. 971, [974, 975].

"The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. Cf. Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447. Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand."

The trial court's decree was affirmed, and the cause was remanded to that court "to be dismissed without prejudice to such proceedings as a state court may consider appropriate."

It is clear that the FSC grounded its decision upon the holding that federal courts would not exercise their "discretionary extraordinary equitable jurisdiction to grant an injunction," where to do so would not be in furtherance of "the harmonious relation between state and federal authority" in matters involving the public policy of the state and where adequate and speedy remedy was afforded in the state courts. Our concern with the opinions in these cases is their bearing as

determining factors upon the question whether the judgment of the FSC in the Sun case was, as to issues under Texas conservation laws, tantamount to a dismissal "because of a want of jurisdiction" of the Federal District Court, within the meaning of Art. 5539a. Our elaboration in presenting these decisions is with a view to a clear picture of the situation under which the question at issue arises.

There is of course a distinction between equitable rights—rights cognizable only in equity—and equitable remedies for the enforcement of legal rights. It is the latter alone (injunction) with which we are dealing here. And it should be noted, in this connection, that originally equity concerned itself chiefly, if not entirely, with remedies.

"English equity as a system administered by a separate tribunal originated at an early date as the result of the inability, and to some extent of the unwillingness, of the common-law courts to meet all the requirements of justice by granting relief in all proper cases." 30 C.J.S., Equity, p. 321, § 2. See also 19 Am.Jur. pp. 40, 41, § 4.

Where equitable remedy was sought it was necessary to bring the action in a court of equity, and the lack of adequate remedy at law furnished both the ground and limit of equity jurisdiction. "The adequacy of a remedy at law, as a line of demarcation between courts of law and of equity, is strictly preserved." 30 C.J.S., Equity, p. 338, § 19. "As a general rule, the inadequacy of the remedy at law is both the foundation of, and conversely a limitation on, equity jurisdiction." Id. § 20. Manifestly therefore a dismissal because of adequate remedy at law is technically as well as essentially dismissal for "want of jurisdiction." It may well be that generally and in the abstract there is a distinction between want of equity jurisdiction and refusal on discretionary ground to exercise such jurisdiction. But where the asserted ground of such refusal is in essence the same as want of equity jurisdiction, the distinction in substance disappears. If a court should say: you have an adequate remedy at law and therefore we dismiss your suit, clearly this would be a dismissal for want of jurisdiction. This would be equally true had the court said: you have an adequate remedy at law, therefore we refuse to exercise our "discretionary" jurisdiction to

grant the equitable relief you seek. The only difference in the situation there and that here is that here the dismissal was not because of adequate remedy *at law,* but because of adequate remedy *in the State courts.* Essentially, from the viewpoint of jurisdiction, there is no difference in the two situations. In each it is the existence of adequate remedy elsewhere (in another court) which furnishes the ground of refusal to exercise equity jurisdiction; and it is immaterial whether such jurisdiction be called or properly classified as "discretionary". The effect is the same to the litigant. He is denied the right to prosecute his suit in the court he has chosen on the sole ground that he has an adequate remedy in another court, which court (for reasons already stated) is better equipped to adjudicate his rights, and should, as a matter of public policy, be accorded the exclusive authority (jurisdiction) to adjudicate those rights. This is saying in effect that the federal courts are not proper courts or courts of proper jurisdiction in which to bring this class of suits but the State courts are such proper courts or courts of proper jurisdiction. And we think clearly the judgment of the Supreme Court was tantamount to a dismissal "because of a want of jurisdiction" within the meaning of Art. 5539a. The word "jurisdiction" is used in a variety of senses. Sometimes it is used in the sense of venue, even in cases where venue is not fundamentally jurisdictional and is subject to waiver. A dismissal on the ground of improper venue (before our present statutes governing transfer of such cases) would be for want of jurisdiction. The dismissal in the Sun case was clearly because the action was not brought in a "proper court." Art. 5539a was clearly designed to apply to such dismissal. To hold otherwise would give controlling effect to form and not to substance. The appellees brought their suit in the Federal court. It was dismissed because the State courts were the proper courts or courts of proper jurisdiction in which to bring the suit. Manifestly the dismissal was because the Federal court was a wrong court, an "improper court," and therefore in effect a "court of improper jurisdiction."

Appellants also suggest that "It is doubtful whether Article 5539a should be construed to apply to suits in the federal courts." The only authority cited is the case of·Constitution Pub. Co. v. De Laughter, 95 Ga. 17, 21 S.E. 1000. It is conceded that the construction given to the wording of the Article there involved was predicated upon the wording of the original act ("courts of this state") of which it was the successor by re-enactment and codification. There is nothing in the wording of Art. 5539a which would limit its application to state courts. Nor is there any basis contextually or otherwise to imply such construction. Every consideration above expressed for giving the Article a liberal construction applies here with equal force, and precludes a construction which would limit its application where no limitation was expressed or necessarily implied.

■ The only remaining question is whether the strip is entitled to be considered as a separate tract for development purposes under the voluntary segregation rule. The facts in this regard are without dispute. The strip was a part of a tract of 102⅓ acres, the mineral title to which had been severed by lease. The east 50 acres of this lease had been conveyed to the Magnolia and thereafter the west 50 acres were conveyed to the Sun. This left the 2⅓-acre strip. The contention that the voluntary segregation rule does not apply is predicated solely upon the ground that at the time of segregation from the Sun lease the spacing rule applicable to the field required a minimum of 300 feet between wells and 150 feet from property lines; which provided a pattern of drainage area of 300 feet square or approximately 2.1 acres; and since the strip exceeded this acreage it was entitled to one well as a matter of law. The only cases cited in support of this view are Humble Oil & Refining Co. v. Railroad Commission, Tex.Civ.App., 94 S.W.2d 1197 (error ref.) and Wencker v. Railroad Commission, Tex.Civ.App., 149 S.W. 2d 1009. These decisions were predicated upon the holding that there had been a substantial compliance with the rule because the configuration of those tracts was such that the deviation from the rule was so slight as to be inconsequential. These cases present no analogy to that here where the strip is only about 49 feet wide and about 2131 feet long. To authorize its development as a separate tract would entirely upset the spacing pattern and circumvent the objectives of the spacing rule.

The trial court's judgment is modified so as to eliminate therefrom the provi-

sion that it "shall be without prejudice to a new application" to the Commission "for permit to drill and operate one well" on the strip; and as so modified it is affirmed.

Modified and affirmed.

. On Motion for Rehearing.

The motion states that our construction of Art. 5539a "is not only contrary to the ordinary and accepted meaning of the words used in the statute, but is also contrary to the construction that has been placed upon the statute in previous decisions."

In support of the latter statement three of the four cases listed in our original opinion (Binge v. Gulf; Chalmers v. American; Garrett v. Hartford) are cited. In view of the statement we will briefly review these cases.

In the Binge case the suit had been filed in 93rd district court for $500 plus interest. It was later voluntarily dismissed and another suit on the same claim was filed in the 92nd district court within 60 days after dismissal. Each of these courts manifestly had jurisdiction, and the dismissal from the 93rd being voluntary and not for want of jurisdiction, it was plain that limitation was not tolled by its pendency under the Article.

In the Chalmers case the two suits were filed in the same court. The first was dismissed for improper joinder of parties and causes of action, the issue being raised by plea in abatement. The decision appears to be in conflict with the earlier case of Wood v. Dittmar, where the dismissal was of a cross-action on account of improper joinder. However that may be, and regardless of one's views as to which decision is correct, there is a clear distinction between dismissal for improper joinder in the same suit of parties or causes of action and dismissal upon declination to take jurisdiction because another court for reasons of comity or otherwise is the appropriate tribunal; the distinction being between the *manner* in which suit was brought in a *proper court*, on the one hand, and the *court* (an *improper* one) in which the suit was brought, on the other. In neither of the two cited cases was writ of error applied for; and the question they present can hardly arise again, since under Rule 41, Texas Rules of Civil Procedure, dismissal may be avoided by severance in improper joinder cases.

The Garrett case is clearly not in point here. That was a suit to set aside an order of the Industrial Accident Board, the time limit for filing which was 20 days after notice of appeal from the Board's order. The first suit was for an amount in excess of $3,000, and was removed to the federal court upon application of defendant on the ground of diversity of citizenship. Plaintiff voluntarily dismissed the suit in the federal court, and refiled it in the state court within 60 days after dismissal for an amount below $3,000, for the manifest purpose of defeating federal court jurisdiction. The federal court evidently had jurisdiction of the original suit, otherwise the proper procedure was to move to remand to the state court.

Appellants have also cited Fielder v. Hansborough, 195 Ky. 574, 242 S.W. 832, 833. That was a damage suit for false arrest occurring June 27, 1918, as to which a one-year limitation statute applied. Two suits were filed, one on June 9, 1919, in J. circuit court, and the other on June 10, 1919, in S. circuit court. The S. court had jurisdiction and after issue was joined on the merits in that court, plaintiff voluntarily dismissed the suit October 9, 1919. The J. court suit was dismissed for want of jurisdiction November 15, 1919. A third suit was filed in the F. circuit court December 9, 1919. In construing the Kentucky statute, somewhat differently worded than our own, the court held: "* * * if it is made to appear, as in this case, that the litigant has already proceeded in the proper court, and of his own motion has dismissed the suit *after the action was barred by limitation,* the statute does not apply, and the bar is complete, although another action in another court was dismissed for want of jurisdiction." (Emphasis added.) The point is made that the same principle applies here, where suit was first brought in the state court and voluntarily dismissed, and a second suit brought in the federal court. As stated the Kentucky statute is differently worded than ours, which may call for a different construction. An inquiry into that question we regard as unimportant here. The two statutes do have the same general objective, that is, to toll limitation during the period of pendency of a suit brought in good faith in the wrong court. Independently of the wording differences of the two statutes, there are two essential factual differences in the two cases: (1) in the Kentucky case the first

two suits were brought practically simultaneously and remained on the docket until long after expiration of the limitation period, when the suit which had been brought in a proper court was voluntarily dismissed after issue joined upon the merits; whereas the state court suit here was dismitted shortly after its institution (in fact premature) and before resort to the federal court; (2) the state court suit here involved only a part (if any) of the cause of action (the order granting one well) involved in the federal court suit (the later order granting all four wells); whereas all the suits in the Kentucky case involved the same subject matter.

 But aside from the effect of applying the reasoning in the Kentucky decision to the Texas statute and case at bar, we are clear in the view that the filing and voluntary dismissal of the state court suit could have no bearing upon the case other than upon the issue of bona fides in bringing the federal court suit, an issue which under Art. 5539a must be raised by plea in abatement, a feature not present in the Kentucky statute. The factual situation here was this: Original application to the Commission for 4 wells filed 7/22/38; denied 9/2/38; new application filed 1/9/39; granted as to No. 2 well, denied as to other three 3/25/39; suit in state court to set aside said order filed 4/25/39; temporary injunction denied 4/26/39; meantime both Burford (4/5/39) and Sun (4/6/39) had filed motions for rehearing with the Commission; both motions granted 4/29/39; 6/2/39 Burford granted permit to drill all four wells; 6/22/39 Sun filed rehearing motion with Commission, which was denied 7/10/39; state suit voluntarily dismissed and federal suit filed 7/20/39. It will be noted that when the state suit was filed there were then pending before the Commission motions for rehearing by both the Sun and Burford, which motions were later granted and a later order entered granting permit for four wells. The state suit was therefore prematurely brought; and would have to be rebrought either by amendment or by filing a new suit so as to cover the order of June 2, 1939. From the date of the rehearing order (4/29/39) until 7/10/39 there was no effective order granting any permit to drill any well. The 6/2/39 order granted permit to drill all four wells, and was the only effective crder in the premises. In this situation the Sun and Magnolia followed the procedure of dismissing the pending suit which related only to an order which had been set aside, and filed a new suit, this time in the federal court, which was the first suit filed contesting the 6/2/39 order, no suit thereon having ever been filed in the state court other than the instant suit. Under these circumstances it seems plain that there was no prior suit filed in the state court involving the same subject matter as the instant suit; the inclusion of the superseded order granting one well being mere surplusage. But even had there been we think clearly the result would have been the same, absent a showing under plea in abatement that the federal court suit "filing" was "in intentional disregard of jurisdiction." Under our practice no deleterious consequences attach to the mere filing and dismissal of a suit, other than the payment of costs.

As to the first above-quoted statement in the motion—that our interpretation is "contrary to the ordinary and accepted meaning of the words used in the statute"—our views thereon are quite elaborately expressed in the original opinion. There is, however, one phase of the subject that was not therein directly touched upon.

 As therein stated, in so far as concerns state law questions, the FDC suit was modeled along the same lines as Rule 37 cases in the state courts under Art. 6049c, § 8, that section being expressly invoked, and violation of our conservation laws being alleged. The relief sought (besides injunction) was cancellation of the orders and denial of the right to drill thereunder. It has been repeatedly held that the gist of the cause of action created by Art. 6049c, § 8, is the judicial determination of the validity of the order involved (see Corzelius v. Harrell, Tex.Civ. App., 179 S.W.2d 419, 426) and "that injunctive relief is merely an enforcement remedy ancillary to a judgment cancelling an order of the Commission." Allen v. Gulf Oil Corporation, Tex.Civ.App., 139 S.W.2d 207, error refused. Under our practice, if for any reason the equitable injunctive relief should not be deemed appropriate in a given case, the court's jurisdiction to determine the validity of the order and cancel it would be in nowise affected. In event of cancellation further production under the order would be illegal, and a variety of enforcement measures could be resorted to other than injunction. Under the Federal Rules of Civil Procedure, 28 U.S.C.A. following

section 723c, effective September 1, 1938, prescribing one form of civil action applicable to both law and equity cases, we apprehend that so far as procedure is concerned there is no essential difference between the federal and Texas courts in the particular here involved; and that a suit in the former seeking relief both at law and in equity would not be dismissed solely because the right to the sought equitable relief should fail. This consideration adds another difficulty in arriving · at a conclusion of which one may feel entirely confident as to the proper analysis of the FSC's decision in the Sun case. At most, however, a three horned dilemma is presented: either (1) the fact that equitable relief (injunctive) was sought characterized the suit as one in equity, and since adequate and appropriate relief could be had in another court, the entire case was dismissed and the parties relegated to that other court; or (2) the court for reasons of comity or public policy would not assume jurisdiction over state law issues involved in administering the conservation laws; or (3) the right of action created by Art. 6049c, § 8, in so far as it concerns such administration, is · appellate and jurisdiction thereof cannot be conferred by state law upon a federal trial (non-appellate) court. There is some basis for adopting horn 2 or 3 or both, in expressions in some of the FSC's opinions which refer to the relation between the state courts and the Commission in the administration of the conservation laws under Art. 6049c, § 8, as a partnership. We merely pose the issues involved in · the proper analysis of the FSC decision. Whichever horn of the posed dilemma one takes the result is the same in so far as concerns our present inquiry. The effect, the governing factor in determining whether Art. 5539a applies, is the same in any event—appellees were denied the right to litigate their suit as to state law issues in the federal court because the state courts afforded the appropriate remedy. The effect of the order as one of dismissal for want of jurisdiction cannot be obviated by means of nomenclature. And this is true in the instant case regardless of the distinction in a proper case between want of jurisdiction and refusal to exercise it. If the FSC intended the effect of their decision to be that the federal courts may not assume jurisdiction of questions of state law affecting the administration of the state conservation laws arising in suits brought under Art. 6049c, § 8, regardless of whether equitable relief is sought; one may welcome the decision as a practical solvent of the confusion arising from concurrent federal and state court jurisdiction, however difficult it may be for one to follow the course of reasoning by which that decision is arrived at.

The motion is overruled.

Overruled.