**James GRIFFEN, Plaintiff-Appellant,**

v.

**BIG SPRING INDEPENDENT SCHOOL DISTRICT, et al., Defendants-Appellees.**

**No. 80-2149.**

United States Court of Appeals, Fifth Circuit.

June 9, 1983.

646

Michael Gottesman, Bredhoff, Gottesman, Cohen & Weinberg, Mady Gilson, David Rubin, Washington, D.C., for plaintiff-appellant.

Jones, Milstead, Jones & McKinney, Richard C. Milstead, Big Spring, Tex., Randal M. Patterson, Odessa, Tex., for defendants-appellees.

Before BROWN, GOLDBERG and HIGGINBOTHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal from a summary judgment for the defendant in a civil rights case raises two procedural issues. Appellant Griffen was a teacher in the Big Spring Independent School District whose contract was not renewed. Griffen believed this nonrenewal was racially motivated and pursued administrative remedies in the state system. These remedies were ultimately unsuccessful and Griffen filed a civil rights action in federal court. On Big Spring's motion for summary judgment, the trial court ruled against Griffen on the grounds that Griffen's claim was barred by the statute of limitations and, alternatively, that Griffen was collaterally estopped by the state proceedings. We reverse and remand for further proceedings.

I. INTRODUCTION

Beginning in 1973, Griffen was employed by the Big Spring Independent School District ("Big Spring") as a high school teacher/coach under a series of one year contracts. After various internal decision-making procedures, Big Spring notified Griffen on May 13, 1977 that his contract would not be renewed. Griffen, a black, believed his termination was racially motivated and requested a hearing before the school board. On June 9, 1977, the board held a hearing and determined it would

take no action, thus letting Griffen's contract lapse.

Griffen then appealed the board's decision to the Texas Education Agency under Tex.Educ.Code Ann. § 11.13 (Vernon 1972), alleging that his discharge was racially motivated. Beginning December 8, 1977, the Assistant Deputy Commissioner of Education conducted two days of hearings with testimony from various witnesses. On September 15, 1978, the hearing officer issued a Proposal for Decision including findings of fact and conclusions of law, finding that Griffen's discharge was racially motivated and recommending reinstatement with back pay. The hearing officer's recommendations were transmitted to the Texas Commissioner of Education, who was charged by law with the duty of making the actual decision. On November 14, 1978, the Commissioner issued a decision, which essentially adopted the hearing officer's proposed decision.

Big Spring appealed this decision to the Texas State Board of Education. During the pendency of the appeal, Big Spring had two ex parte contacts with the Board. First, during an unrelated conversation between Jim Binnion, a State Board member, and Lynn Hise, Superintendent of Big Spring, Binnion asked Hise "to send him some material in regard to" the appeal. Hise Deposition at 42. Second, in January, 1979, the General Counsel of the Texas Education Agency spoke to Big Spring's counsel and asked him to submit proposed findings and a proposed order. Griffen was neither advised of this request nor asked to submit his own proposed findings or orders. On January 12, 1979, Hise delivered the proposed findings and order to the State Board. On January 13, 1979, the State Board adopted the proposed findings and orders as its own. The State Board "found" that Griffen's termination was properly motivated and reversed the Commissioner's findings and ruling. The State Board held no actual hearing and gave no

explanation for reversing the findings of the Commissioner and hearing examiner, which were based on a full evidentiary hearing.

On February 12, 1979, Griffen filed for judicial review of the Board's decision in the state district court of Travis County. This is the court charged with exclusive jurisdiction of review of actions of the State Board. One of the jurisdictional prerequisites for review of a State Board decision, however, is that a motion for rehearing be filed with the State Board. Tex.Rev. Civ.Stat.Ann. art. 6252–13a (Vernon 1970). Because Griffen had failed to file a Motion for Rehearing, the court determined that it was without jurisdiction and dismissed the case on May 30, 1979.

One week later, on June 8, 1979, Griffen filed a complaint in federal district court under 42 U.S.C. §§ 1981, 1983, and 1985, on the same grounds and requesting the same relief. The district court granted Big Spring's motion for summary judgment on two grounds. First, the court held that Griffen's action accrued on May 13, 1977. The relevant statute of limitations is two years, Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon 1958), so Griffen's suit, filed June 8, 1979, was barred. Second, the court held that Griffen was collaterally estopped by the State Board's findings. This appeal followed.[1]

On appeal Griffen argues that both of the district court's rulings were incorrect. Griffen provides three arguments that his claim is not barred by the statute of limitations. First, he urges that the statute should be tolled while pursuing state administrative remedies. Second, he claims that Big Spring's June 9, 1977, decision was a separately actionable event within the two year statute. Third, he contends that the Texas "wrong court" tolling statute, Tex.Rev.Civ.Stat.Ann. art. 5539a (Vernon 1958), applies and tolled the statute during the pendency of the state court proceedings. Griffen also argues that the proceeding of

---

1. Oral argument in this case was postponed pending the ultimate resolution of similar issues in *Patsy v. Florida Int'l Univ.*, 634 F.2d 900 (5th Cir.1981) (en banc), *rev'd*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982).

the State Board should not be given collateral effect because it was not based on adequate procedures and because of the ex parte contacts. We shall treat these arguments in turn.

## II. STATUTE OF LIMITATIONS

### A. State Law, Exhaustion, and Tolling

■ Griffen argues that the statute of limitations should have been tolled during the time he was exhausting state administrative remedies. During the pendency of this appeal the Supreme Court clarified this point in *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). *Patsy* held that state administrative exhaustion is not required to pursue a federal section 1983 action. *Patsy* specifically mentioned the continuing vitality of *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), which held that pursuing state remedies does not toll the statute of limitations for section 1983 actions. *Patsy*, 457 U.S. at 514 n. 17, 102 S.Ct. at 2567 n. 17, 73 L.Ed.2d at 186 n. 17. Accordingly, any tolling must be by operation of state law.

### B. Accrual of the Cause of Action and the June 9 Board Meeting

■ Griffen was notified on May 13, 1977 that his contract would not be renewed. On June 9, 1977, the school board provided Griffen with a hearing and declined to take action leading to a renewal of Griffen's contract. Because Griffen's suit was filed June 8, 1979, the June 9, 1977 date is crucial. Below Griffen argued that his cause of action did not accrue until June 9, 1977. This argument is foreclosed by *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), holding that reconsideration of a discriminatory decision does not draw the accrual of a cause of action past the initial date of decision. Griffen does not press this argument on appeal.

■ Instead, Griffen argues on appeal that the June 9, 1977, decision constitutes an independent actionable event. This allegation was made in Griffen's complaint:

On June 9, 1977, the Board of Trustees of the Big Spring Independent School District voted not to renew Plaintiff's contract to teach in the District. Plaintiff alleges that the School Board, acting in concert with Defendants McKenzie, Smith and Robbins, took this action on account of Plaintiff's race.

Record at 3. Thus, the claim that the June 9, 1977 meeting was an independent actionable event was before the court from the very first.

The trial court handled this allegation by holding that "[t]he board took no action after the hearing of June 9, 1977 but let stand its decision in May." Record at 255. Big Spring here makes the same argument—the board did nothing on June 9, so no cause of action arose on that date. We are not persuaded that a sin of omission cannot be an actionable event.

The board, by its own rules, was obligated to give Griffen a hearing. A hearing necessitates a decision whether to alter the status quo. The fact that the board chose to preserve the status quo does not cause the decision to evaporate into the mists. If the decision to preserve the status quo were nondiscriminatory, such as a review of the principal's recommendation under some kind of plain error standard, Griffen will not prevail. On the other hand, Griffen might well be able to show that the decision to preserve the status quo was itself discriminatorily motivated. *Ricks* certainly does not preclude this common-sense notion. Cf. *Al-Hamdani v. State University*, 438 F.Supp. 299 (W.D.N.Y.1977) (improper review of tenure decision may itself give rise to Title VII claim). In short, we hold that Griffen has alleged a cause of action accruing on June 9, 1977, that will withstand the plea of limitations; in light of the rest of our holding, however, this portion is of little practical import.

### C. Texas' Wrong Court Tolling Statute

Griffen's broadest argument is that the entire claim is saved from the statute of limitations by Texas' "wrong court" tolling

statute. Tex.Rev.Civ.Stat.Ann. art. 5539a (Vernon 1958) provides:

> Limitations on dismissal for want of jurisdiction and refiling action in proper court

> When an action shall be dismissed in any way, or a judgment therein shall be set aside or annulled in a direct proceeding, because of a want of jurisdiction of the Trial Court in which such action shall have been filed, and within sixty (60) days after such dismissal or other disposition becomes final, such action shall be commenced in a Court of Proper Jurisdiction, the period between the date of first filing and that of commencement in the second Court shall not be counted as a part of the period of limitation unless the opposite party shall in abatement show the first filing to have been in intentional disregard of jurisdiction.

Griffen's argument is that the action in state district court was dismissed for lack of jurisdiction. The present claim was filed in federal court within sixty days. Thus, the statute applies by its literal terms.

Big Spring makes two arguments in response. First, it argues that the state district court was not a court of improper jurisdiction. It was the right court, but the appeal was pursued in the wrong manner. Second, Big Spring argues that the proceeding in federal court under the civil rights statutes is a different cause of action from review of a state administrative action in a state court. We shall first note a few general points about the saving statute and then address Big Spring's two arguments.

■ *1. Art. 5539a.—Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), instructs us to apply state law as to tolling. This includes not only state statutes, but also state construction of state statutes. Thus, in interpreting article 5539a, we are guided by state construction.

■ Two general issues are relevant before proceeding to the merits of Big Spring's two arguments. First, we should consider whether the policies of the statute of limitations would be served by applying it to this case. In a recent Fifth Circuit case deciding whether article 5539a would apply when the first suit was in a court of a different state, the court stated:

> Finally, we note that Dicker's suggested rule would not further the policies that ordinarily provide justification for the results otherwise created by statutes of limitations:

> Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitations and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Burnett v. New York Central Railroad Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). It will virtually always be the case, as here, that a defendant who seeks a dismissal based on want of jurisdiction will have actual notice that the plaintiff intends to pursue a claim against him; given the extremely high probability that the plaintiff will refile in a proper court if the defendant is successful in obtaining the dismissal in the forum of the plaintiff's choice, the defendant has no one but himself to blame if evidence is lost, memories fade, and witnesses disappear.

*Long Island Trust Co. v. Dicker,* 659 F.2d 641, 647 (5th Cir.1981). Big Spring had ample actual notice that Griffen intended to pursue his claim, and like the court in *Long Island* we see no purpose of the statute of limitations that will be served by its application here.

The second general point has to do with the nature of article 5539a. Articles 5539a and 5539b, allowing for amending pleadings, "are remedial, designed to protect a litigant from loss of his cause of action by a plea of limitation under circumstances un-

der which that would otherwise occur. They should be liberally construed and applied to effect that purpose." *Republic National Bank v. Rogers,* 575 S.W.2d 643, 647 (Tex.Civ.App.—Waco 1978, writ ref'd n.r. e.). "It is manifest that the Act is remedial in its every essence. It should therefore be given a liberal construction with a view of effectuating its manifest objective—relief from penalty of limitation bar to one who has mistakenly brought his action 'in the wrong court.'" *Burford v. Sun Oil Co.,* 186 S.W.2d 306, 310 (Tex.Civ.App.—Austin 1944, no writ).

Thus, in considering the arguments regarding the statute of limitations, we must keep in mind that we are deciding a case in which application of the statute of limitations would serve no purpose other than allowing Big Spring to escape trial, and that we are construing a remedial statute designed to be liberally applied.

■■■ *2. Wrong Court?*—Big Spring's first argument is that the dismissal for want of jurisdiction in the state district court is not the kind of jurisdictional dismissal article 5539a was intended to cover. Instead, Big Spring claims, article 5539a was designed to reach only a "wrong court" sort of lack of jurisdiction. Big Spring argues that the district court in Travis County was the right court, but the appeal was taken in the wrong manner, so article 5539a should not apply.

We are not persuaded. First, the statute by its very terms applies: "When an action shall be dismissed *in any way* . . . because of a want of jurisdiction . . . ." Tex.Rev. Civ.Stat.Ann. art. 5539a (Vernon 1958) (emphasis added). The state district court plainly stated "[t]his Court does not have jurisdiction to hear the claim of the Petitioner, James E. Griffen." Record at 15. Typically, a statute may be stretched a little bit beyond its literal terms to effectuate its policies. Here Big Spring asks us to constrict a remedial statute designed to be liberally construed, to narrow its scope in spite of its literal terms, when to do so would frustrate its purpose and would not promote the purposes of the statute of limitations. We are reluctant to do so.

Big Spring appears to rely on the language quoted above from *Burford* to support a theory that article 5539a applies only to some kind of intrinsic lack of jurisdiction making a court a "wrong court." *Burford* itself negates that narrow reading. *Burford* involved review of a decision by the Texas Railroad Commission. The plaintiffs had initially pressed their claim in federal court on both state and fourteenth amendment grounds. The Supreme Court held, however, that the existence of substantial state administrative remedies suggested that the federal courts should stay the exercise of their equitable jurisdiction. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). After dismissal in the federal courts the plaintiffs pressed their claim in the state courts. The defendants raised the statute of limitations and the plaintiffs responded that article 5539a tolled the statute. The Texas Court of Civil Appeals agreed. *Burford v. Sun Oil Co.,* 186 S.W.2d 306 (Tex.Civ.App.—Austin 1944, no writ).

*Burford,* as the source of the "wrong court" phrase relied upon by Big Spring, can give us some insight into what was meant by the phrase. *Burford* points out, *id.* at 310, that the phrase originates in the caption of the article as it was enacted: "An Act to extend the period of limitation because of filing of any action in the wrong Court, unless opposite party shows intentional disregard of jurisdiction; and declaring an emergency." The text of the article does not mention "wrong court." It speaks of "a want of jurisdiction." Thus, the legislature appears to have thought the wrong court was one that wanted jurisdiction.

The *Burford* court was primarily struggling with the question whether a discretionary dismissal by a federal court that clearly has subject matter jurisdiction would count as a dismissal for want of jurisdiction under article 5539a:

> And we think clearly the judgment of the Supreme Court was tantamount to a dismissal "because of a want of jurisdiction" within the meaning of Art. 5539a. The

word "jurisdiction" is used in the sense of venue, even in cases where venue is not fundamentally jurisdictional and is subject to waiver. A dismissal on the ground of improper venue (before our present statutes governing transfer of such cases) would be for want of jurisdiction. The dismissal in the Sun case [*Burford* in the Supreme Court] was clearly because the action was not brought in a "proper court." Art. 5539a was clearly designed to apply to such dismissal. To hold otherwise would give controlling effect to form and not to substance. The appellees brought their suit in the Federal Court. It was dismissed because the State courts were the proper courts or courts of proper jurisdiction in which to bring the suit. Manifestly the dismissal was because the Federal Court was a wrong court, an "improper court," and therefore in effect a "court of improper jurisdiction."

*Id.* at 315.

The use of the "wrong court" language in *Burford* was for a very different purpose from that urged by Big Spring. The court in *Burford* certainly saw the key statutory test as whether the first court was a "court of improper jurisdiction." In *Burford* the problem was whether the statutory language would be stretched to cover a court of proper jurisdiction that chose not to exercise that jurisdiction because an alternate forum was preferable. In other words, *Burford* was concerned with whether a "wrong" court could count as an article 5539a court of improper jurisdiction.

We have no question that the dismissal of Griffen's case by the state court was for want of jurisdiction. But Big Spring at-tempts to turn *Burford* topsy-turvy and have us read want of jurisdiction as some narrower kind of euphemism for "wrong court." We will not employ such an unnatural construction, especially when "wrong court" was so clearly used to mean "a court of improper jurisdiction." Rather, we hold that a dismissal specifically denoted a dismissal for want of jurisdiction is in fact a dismissal for want of jurisdiction within the meaning of article 5539a.

■■■ *3. Same Action?*—Big Spring's second argument against the applicability of article 5539a is that article 5539a applies only when an action is dismissed for want of jurisdiction and *such action* is filed in a court of proper jurisdiction. Although Big Spring took precisely the opposite position before the district court to support its res judicata argument,[2] before *this* Court Big Spring argues that the action in state court was for review of a state administrative decision, whereas the action in federal court was for violation of federal civil rights statutes. We believe that this argument would "give controlling effect to form and not to substance," *Burford,* 186 S.W.2d at 315, and we reject it.

The essence of both actions was that Griffen claimed he had been dismissed for racially discriminatory motives in violation of his right to be free from racial discrimination. The opinion of the hearing officer and the decision of the Texas Commissioner of Education specifically cited Griffen's constitutional right to be free from discrimination. In both state and federal courts the relief Griffen requested was reinstatement and back pay. The substance of the

2. THE COURT: What is the difference between collateral estoppel and res judicata?

MR. MILSTEAD [counsel for Big Spring]: I think there may be some fine judicial lines there, Your Honor.

THE COURT: Is this the same cause of action, the one before the Board of Education and the one in the court?

MR. MILSTEAD: Yes, sir, they were asking—the petition of the Plaintiff before the Board, as I recall, asked for the same sort of relief as asked for here.

THE COURT: That is the only possible distinction I can see on the facts of this case, it might have a little different cause of action there, 1983 is created by Congress, and this procedure is created by the State Legislature.

MR. MILSTEAD: It is the same facts, Judge.

THE COURT: Yes. I wasn't worried about it being the same facts.

MR. MILSTEAD: Yes, sir.

Record at II–94.

two actions is certainly the same. The sole difference between them—one involved review of the claim by a state administrative agency and one involved review of the claim under federal civil rights statutes—is nothing more than a difference in form. The underlying cause of action is the same. We will not adopt Big Spring's reading of a remedial statute intended to be liberally construed when the result would be to elevate form over substance.

The Texas case most on point supports our view of article 5539a. *Republic National Bank v. Rogers,* 575 S.W.2d 643 (Tex.Civ. App.—Waco 1978, writ ref'd n.r.e.), involved a dispute over whether land had been adversely possessed. The suit was initially filed in federal court in diversity, and the owner of record initially requested money damages for the trespass and injunctive relief granting title. The injunctive aspect of the suit required joinder of a party that would destroy diversity, so the complaint was amended to delete that claim. Unfortunately for the plaintiffs, the resulting monetary claims were below the federal court's jurisdictional amount; consequently, the suit was dismissed. The plaintiffs then brought a suit to try title in state court. The defendants argued that the suit to try title was a different action from the suit for damages for trespass in the federal court. The state court rejected the defendant's argument:

> Defendant argues that because plaintiff dropped the issue of title from its pleadings in the Federal Court, and because that issue was not before the Court when the case was dismissed, it was effectively abandoned and not brought forward in the case at bar under the provisions of Article 5539a. Defendant emphasizes the words "such action dismissed" in the statute. We reject that argument. Under the statute, the case before us is a continuation of the suit originally filed in Federal Court. The

"action" brought forward was the one pleaded there, and any permissible amendments to it under Article 5539b. As we have previously stated, the pleadings in Federal Court contained all the allegations necessary to try title to the property simply by tacking on a prayer for that relief.

*Id.* at 647.

In the instant case Griffen does not even need to tack on a prayer for different relief, because the relief requested was the same in both cases. The pleadings in the state proceedings contain all of the allegations necessary to establish a violation of the federal civil rights statutes. The relief requested is the same. We refuse to read article 5539a as holding that actions are not the same merely because the same facts can support the same relief for violation of the same rights under two different enforcement schemes.

In summary, we hold that a dismissal for failure to satisfy a jurisdictional prerequisite for judicial review of an administrative decision is a dismissal for want of jurisdiction within article 5539a. Furthermore, a federal section 1983 action to vindicate the same rights underlying the claim for review of the administrative decision constitutes the same action as review of the administrative decision for purposes of article 5539a. Thus, Griffen's claim is not barred by the statute of limitations because article 5539a tolled the statute.

## III.  COLLATERAL ESTOPPEL

▆▆▆▆    The second ground supporting the district court's summary judgment in favor of Big Spring was that Griffen was collaterally estopped by the findings of the State Board of Education that Griffen's nonrenewal was not discriminatorily motivated.[3] We disagree. In this case the procedures of the state administrative body, the State Board, were so grossly inadequate

---

**3.**  This point was raised below under the rubric of both collateral estoppel and res judicata. The doctrines, of course, have differences, but those differences are not relevant here. We, like the district court, will treat both together under the nom de guerre of collateral estoppel.

as to call for whatever damage control measures we may impose.

We have previously recognized that the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the claim or issue. *Allen v. McCurry,* 449 U.S. [90], at 95 [101 S.Ct. 411, 415, 66 L.Ed.2d 308]; *Montana v. United States,* 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328–29 [91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788]. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of the procedures followed in the prior litigation." *Montana v. United States,* 440 U.S., at 164 n. 11 [99 S.Ct. at 979 n. 11]. *Cf. Gibson v. Berryhill,* 411 U.S. 564 [93 S.Ct. 1689, 36 L.Ed.2d 488] (1973).

*Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982) (footnote omitted). On some occasions findings made by administrative bodies may be given collateral effect. *See, e.g., United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Painters District Council No. 38 v. Edgewood Contracting Co.,* 416 F.2d 1081 (5th Cir.1969); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4475 (1981). This is not one of those occasions.[4] We believe that here there is good reason to doubt the quality, extensiveness, *and* fairness of the procedures followed.

To briefly restate the procedures followed, first a hearing officer heard two days' worth of testimony, producing a record of some 408 pages. The parties were represented by counsel, the nine witnesses were examined and cross-examined, and twenty-three exhibits were introduced. The hearing officer acknowledged the difficulties in proving racial discrimination: "Of necessity, proof of racial discrimination often rests on circumstantial evidence. Invidious discrimination is frequently masked in subtleness and seldom is so blatant as to submit to ease of proof." Plaintiff's Exhibit 22 at 2–3. The hearing officer also recognized that "in those instances where testimony is in direct conflict, the Hearing Officer is charged with the duty to judge the credibility of witnesses and to ascertain the facts which the evidence, considered as a whole, tends to prove." *Id.* at 3. Based on the testimony and credibility calls among witnesses, the hearing officer concluded that Big Spring's ostensible reasons for not renewing Griffen were "mere pretexts" and that the real reason was racial discrimination. *Id.* at 6–7. The Texas Commissioner of Education adopted the hearing officer's findings in making his decision reinstating Griffen.

Up to this point we have no quarrel with the procedures followed. The hearing officer appears to have been conscientious and thorough in reaching his conclusions and findings. Similarly, the Commissioner's decision appears to be well supported. Our problems concern the procedures in the Texas State Board of Education.

During the pendency of the appeal before the State Board, Big Spring had two ex parte contacts with the Board. One of these was a phone call around January 10, 1979, requesting that Big Spring prepare findings of fact and conclusions of law reversing the hearing officer. *See* Plaintiff's Exhibit 24. These were delivered on January 12. *Id.* On January 13, 1979, the State Board adopted this proposal as its decision. The proposed findings were submitted and adopted without hearing any testimony, without giving Griffen any opportunity to

---

4. Griffen has argued that it is inappropriate to extend collateral effect to administrative decisions into the context of federal civil rights actions. This is an extremely complex question, *see, e.g.,* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4471 (1981), as yet unsettled in this Circuit. Because we hold that the state proceedings *here* do not merit collateral effect, we need not address the more difficult general question.

respond to Big Spring's proposal, and without giving Griffen any opportunity to submit a proposal of his own. The findings of fact adopted by the State Board basically reversed the credibility calls made by the hearing officer. *See* Plaintiff's Exhibit 26.

Big Spring argues that Griffen had ample opportunity to cross-examine witnesses, build a record, and so on. This, Big Spring claims, makes the administrative procedure fair and deserving collateral effect. This contention misses the point. We are not concerned so much with the procedures before the hearing officer. Rather, we are concerned with the procedures of the State Board in overturning the findings of the hearing officer. We hold that the procedures of the State Board in this case do not have the requisite indicia of quality, extensiveness, and fairness to merit collateral effect. *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Painters District Council No. 38 v. Edgewood Contracting Co.,* 416 F.2d 1081 (5th Cir.1969).

The most fundamental problem with the State Board proceedings is that the State Board, on the basis of a written record, without the benefit of any live testimony to support its credibility determinations, chose to reverse the credibility determinations made by the hearing examiner, who did listen to live testimony and observe the demeanor of the witnesses under direct and cross examination. The most favorable view of this proceeding would be to totally ignore the fact that the hearing officer made findings based on his view of the credibility of the witnesses. Then we could view the Board decision merely as a decision based on a written record without live testimony.

In *Nasem v. Brown,* 595 F.2d 801, (D.C. Cir.1979), the court stated:

> We are particularly disturbed by the inability of the parties to present live witness testimony in a proceeding that necessarily turns largely on retaliatory motivation, *see* B. Schlei & P. Grossman, Employment Discrimination Law 438–39 (1976), and thus demands that the decision-maker weigh witness credibility. Similarly, there is no opportunity to cross-examine opposing witnesses, the importance of which cannot be underestimated. Any deficiency in agency process that denies parties the procedural opportunity to present their claims for full agency consideration falls short of *Utah Construction.*

*Id.* at 807 (footnote omitted). *See also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4475, at 766 (1981) ("An administrative decision based on a written record, without opportunity for examination or cross-examination of live witnesses, for example, is not likely to support preclusion in a subsequent judicial action."). Thus, even under a favorable view of the State Board's proceedings we would not be inclined to give their findings collateral effect.

Of course, this favorable view blinks reality. Here there actually was live testimony with examination and cross examination at one point in the proceedings. However, the person who was in the best position to make the necessary credibility calls among conflicting testimony reached precisely the opposite conclusion from that reached by the State Board based on a cold record. Given that, we are even less inclined to give the State Board's findings any collateral effect.

We do not mean to suggest that a reviewing board may never reverse the decision of a hearing officer and still retain collateral force. However, such a reversal would more typically be based upon different legal theories or different conclusions and inferences drawn from agreed upon basic facts. At the least, the State Board should have explained why it found the hearing officer's findings of fact to be objectionable. *Cf. Boykins v. Ambridge Area School Dist.,* 621 F.2d 75, 79 (3rd Cir.1980) (denying collateral effect to administrative decision, noting difficulty of determining exact nature of decision on sparse record before the court). All

we can tell from the record is the bottom line that the State Board clairvoyantly chose to believe the witnesses that the hearing examiner chose to disbelieve. This kind of administrative reversal of a hearing officer should not be given collateral effect.

The other major problem lies in the submission of proposed findings by Big Spring. It suggests several factors that standing in isolation do not suffice to deny collateral effect, but that taken together call for denial of collateral effect. First, the request was ex parte. We do not know if the request for findings was prefaced by argument on the merits or was merely a ministerial request. The State Board does not normally allow oral argument, *see* Brief for Appellees at 47, and this contact could have been an unfair opportunity for Big Spring to inject its views into the decisionmaking process. We do not mean to suggest that Big Spring in fact did take unfair advantage of that opportunity, but only that the possibility of that exists because the contact was ex parte.[5]

■ Second, we are disturbed by the fact that one party was asked to prepare factual findings without giving the other party an opportunity to respond to them. In general, the practice of allowing a prevailing party to prepare a ruling is not conducive to the health of the judicial process. *See, e.g.,* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2578 (1971). The practice is condoned, but in a different context. It is one thing for a judge in open court to render an oral decision and ask the prevailing party to produce a written decision in accord with the already-rendered oral decision. It is another thing when a party is asked ex parte to prepare written findings in advance of the actual (or nominal) time of the decision, and not even allow the other party an opportunity to respond.

Third, we find the chronology of these events to be disturbing. The proposed findings were requested at least three days before the purported date of the decision. The decision recites that on January 13 the Board considered the record and briefs and reached its decision. Given the fact that the State Board merely adopted the findings requested three days earlier, the actual decision must have been made at an earlier date, before the Board meeting. This suggests that the decision was not actually the product of the collegial decisionmaking the Board is supposed to provide. Tex.Educ. Code Ann. § 11.13(b) (Vernon 1972).

Though we might not be moved by any one of these problems associated with Big Spring's submission of proposed findings in the aggregate, they are troubling. Just as one mistake on an exam, in isolation, may not call for a failing grade, but a flurry of mistakes will, we hold that the totality of the circumstances surrounding the submission of proposed findings calls for denying collateral effect to those findings after they were adopted by the State Board.

## CONCLUSION

Griffen claims that he was not granted a new contract for employment due to racial discrimination. He assiduously pursued his claim continually from 1977 to the present date. The district court granted judgment against Griffen based on the statute of limitations. The perversity of this result

---

**5.** Tex.Rev.Civ.Stat.Ann. art 6252–13a § 17 (Vernon Supp.1982) provides:

Unless required for the disposition of ex parte matters authorized by law, members or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not communicate, directly or indirectly, in connection with any issue of fact or law with any agency, person, party, or their represent-atives, except on notice and opportunity for all parties to participate.

We need not decide whether David Ryan, an attorney with the Texas Education Agency who called Big Spring's counsel, is covered by this statute. We note only that this is the kind of contact that can easily create the appearance of impropriety, and for that reason alone should be avoided.

cannot escape us. We find that Texas' "wrong court" tolling statute applies to save Griffen from the statute of limitations. We will not constrict the literal terms of a remedial statute intended to be liberally construed so as to deny Griffen an opportunity to be heard.

Griffen was able, temporarily, to win a victory in the state administrative proceedings. After a full and fair hearing, the hearing officer found for Griffen. Unfortunately, the Texas State Board of Education saw fit to substitute its own credibility calls for those of the person on the scene. Such a procedure would not receive a passing grade under any standard save the most perigeal. In a suit to vindicate one of our most important Constitutional rights our standards should reach their apogee. Accordingly, we will not grant preclusive effect to the Board's procedure. Accordingly, the judgment below is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.