**Douglas CLEMENTS and Sue Clements, Plaintiffs,**

v.

**AIRPORT AUTHORITY OF WASHOE COUNTY, et al., Defendants.**

**No. CV–N–91–175–ECR.**

United States District Court, D. Nevada.

Dec. 11, 1991.

Lynn G. Pierce, Reno, Nev., for plaintiffs.

John A. Aberasturi, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Plaintiffs assert claims under "the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution" as well as pendent state claims. Fed-

eral question jurisdiction is invoked pursuant to 42 U.S.C. § 1983. Plaintiffs claim, *inter alia,* that they were discharged from their county jobs by Defendants, and that in so doing, Defendants violated Plaintiffs' due process rights. Before the court in this order is Defendants' motion to dismiss (document # 8). In that motion Defendants claim that: 1) Plaintiffs' first cause of action is barred because it attempts to state a claim directly under the constitution; 2) Plaintiffs' federal civil rights claims are barred by the statute of limitations; and 3) if Plaintiffs' federal claims are barred, their pendent state claims should then be barred as well for lack of federal subject matter jurisdiction.

FACTS

On April 6, 1989, Defendant Robert White, Executive Director of the Defendant Airport Authority of Washoe County (the "Authority"), submitted to the Defendant Board of Trustees of the Airport Authority of Washoe County (the "Board") a plan for reorganization of the Authority. The plan, which the Board accepted on that date, eliminated the positions held by Plaintiffs. Plaintiffs claim that they were retalitorily discharged because they reported alleged improprieties by a former member of the Board. Defendants dispute this and allege that Plaintiffs lost their jobs solely as a consequence of the newly adopted reorganization plan which they claim was adopted legally. On April 7, 1989 Defendants informed Plaintiffs that they would be laid off.

Plaintiffs filed grievances which they presented before grievance panels commissioned under the auspices of the Authority from June 26 through July 3, 1989. Defendant White participated in the hearings in opposition to Plaintiffs. The panels found that the Authority had violated its own Policy and Procedures Manual when it terminated the Plaintiffs and they unanimously ruled that the Plaintiffs had been wrongfully denied transfers to new positions (for which they were qualified) created by the reorganization in lieu of layoff. The panels ordered the Authority to offer the positions to Plaintiffs retroactive to July 1, 1989 with no break in service.

Defendant White did not offer the positions to the Plaintiffs as ordered by the panels but instead issued his own "Findings of Fact and Conclusions of Law" on August 2, 1989 and overturned the decisions of the grievance panels. In response, Plaintiffs sought to have Defendant White's findings and conclusions reviewed by the full Board. On September 7, 1989 the Board held a hearing to decide this issue. Plaintiffs appeared at the hearing as did Defendant White, who Plaintiffs claim acted in an adversarial capacity. On September 28, 1989 the Board issued its own "Findings of Fact and Conclusions of Law" in which it upheld the decision of Defendant White.

Plaintiffs allege further that between the time of Defendant White's decision of August 2, and the hearing before the Board on September 7, Defendant White drafted a letter to the Board members "in which he made damaging and unfounded allegations regarding the impartiality of the Grievance Panels and regarding the actions of a member of both panels." (Plaintiffs opp., document 11, at 5). Plaintiffs claim that none of the Defendants ever offered a copy of the letter to them prior to the hearing, and although the issues raised by the letter were discussed at the Board hearing, Plaintiffs did not even know of the existence of the letter.

On April 12, 1991 Plaintiffs filed this suit. Federal question jurisdiction is based on the civil rights statutes contained at 42 U.S.C. §§ 1983, 1985, and 1988.[1] (Complaint, document 1, ¶ VI). Plaintiffs also allege a number of pendent state claims.

---

1. The court notes that a § 1985 claim cannot be based on defendants' conspiracy to deprive a plaintiff of his right to due process since § 1985 is limited to conspiracies motivated by racial or other class-based discriminatory animus. *Mollnow v. Carlton,* 716 F.2d 627, 628 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984); *Condos v. Conforte,* 596 F.Supp. 197, 210 (D.Nev.1984). Thus, that portion of the claim (which is not here challenged by Defendants) may not be proper. The court does not purport to rule here on that issue, however. A claim under § 1988 is simply a jurisdictional and attorney's fees provision.

Defendants, however, claim that the first cause of action (violation of due process) is barred because Plaintiffs attempt to assert a claim directly under the United States constitution when § 1983 is available. Defendants also claim that all the federal claims are barred by the statute of limitations. Finally, Defendants argue that if the federal claims are dismissed, the pendent state claims must be as well, for lack of subject matter jurisdiction.

DISCUSSION

### A. *The First Cause of Action*

■ Plaintiffs' first cause of action, entitled *"FIRST CLAIM FOR RELIEF"* is found in ¶ XXIX of the complaint and reads as follows:

Defendants WHITE and [the] BOARD, acting under color of state law as individuals and as employees or agents of [the AUTHORITY], wrongfully terminated the employment of Plaintiffs CLEMENTS in violation of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution.

The allegation is preceded by the statement, "Plaintiffs reallege and incorporate Paragraphs I through XXVII, as if fully set forth herein."

In ¶ VI of the complaint, entitled "JURISDICTION," Plaintiffs plead that the case is filed in federal court under 42 U.S.C. § 1983. Later, in ¶ XXVI of the complaint, Plaintiffs allege that, "[a]s a result of the wrongful termination in violation of ... 42 U.S.C. Section[ ] 1983 ... Plaintiffs have been damaged." These two sections are incorporated by reference into the first cause of action. Further, another section asks for attorney's fees pursuant to 42 U.S.C. § 1988 "[a]s a proximate result of the violation of the civil rights of Plaintiffs

CLEMENTS under 42 U.S.C. Section 1983." (See complaint, document 1, at ¶ XXXXI).

Based on this analysis, the court finds that the "first claim for relief" clearly states a cause of action under 42 U.S.C. § 1983 and not a claim directly under the U.S. constitution. Defendants' claims to the contrary are baseless and would result in needless delay if Plaintiffs were required to amend the complaint.[2]

### B. *The Statute of Limitations*

The federal court relies on the applicable state law statute of limitations in § 1983 actions. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Both parties agree that the correct Nevada statute of limitations in this case is two years. *See* NRS 11.190. Defendants argue that since Plaintiffs were informed of the layoffs on April 7, 1989, but did not file this suit until April 12, 1991, they are barred by the statute of limitations.

■ Although, as discussed above, state law governs the *length* of the statute of limitations for a § 1983 action, federal law clearly governs the determination of the point at which the limitations period *begins to run.* *Gibson v. United States,* 781 F.2d 1334, 1340 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). Thus, Plaintiffs emphasis upon NRS 11.200 is misplaced. The Supreme Court has twice addressed the issue of when the statute of limitations begins to run in an employment civil rights case. *See Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), *reh. denied,* 454 U.S. 1166, 102 S.Ct. 1042, 71 L.Ed.2d 322 (1982). The Ninth Circuit has also recently addressed the is-

---

2. In the motion to dismiss Defendants argue merely that the Plaintiffs' first cause of action is an attempt to assert a claim directly under the constitution. On pages 2–3 of the motion, Defendants apparently concede that the Plaintiffs may properly bring a § 1983 case, but read the first claim as one based directly on the constitution. In their reply brief, however, Defendants have seemingly changed tactics. In that document they apparently argue that the complaint

fails to state a cause of action under § 1983 altogether. This argument was not made in their original motion, nor was the issue addressed by Plaintiffs in their opposition. To the extent that this new argument does not address the issues raised by the parties in either the motion or the opposition, the court does not consider it. Furthermore, the court seriously doubts the merits of such an argument.

sue in a case very similar to the present one. *See Hoesterey v. City of Cathedral City,* 945 F.2d 317 (9th Cir.1991).

In *Ricks,* a state college professor challenged the school's decision not to grant him tenure.[3] Ricks' claimed that the school's decision was based on his national origin. The District Court ruled that the statute of limitations began to run on the day that the tenure board notified Ricks that they would not grant him tenure and instead offered him a one-year "terminal" contract. The Court of Appeals reversed, ruling that the statute began to run upon the expiration of the terminal contract, i.e. his last day of work. This later date would have brought the suit within the statute. The Supreme Court reversed the Third Circuit and ruled that the claim was time-barred. The Court stated:

> Determining the timeliness of Ricks' EEOC complaint, and this ensuing lawsuit, requires us to identify precisely the "unlawful employment practice" of which he complains.... In effect, he is claiming a "continuing violation" of the civil rights laws.... Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. [Citation.] If Ricks intended to complain of a discriminatory discharge, he should have identified the alleged discriminatory acts that continued until, or occurred at the time of, the actual termination of employment.
>
> ... The Court of Appeals for the Ninth Circuit correctly held, in a similar tenure case, that "[t]he proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became the most painful." *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (1979) (emphasis added)....

*Ricks,* 449 U.S. at 257–58, 101 S.Ct. at 503–04.

*Chardon v. Fernandez* applied *Ricks* to facts that, on first blush, are comparable to the ones now before the court. In *Chardon,* former administrators of the Puerto Rico Department of Education filed a § 1983 action in which they claimed that they were terminated due to their political views. Again, the key issue was the date on which the statute of limitations began to run. The District Court ruled that the claim was time-barred, as the statute began to run on the day that the plaintiffs were notified of their termination. The First Circuit reversed, ruling that the correct date was the day the plaintiffs' appointments ended. The Supreme Court reversed the Court of Appeals and ruled that the case was indistinguishable from *Ricks:*

> The fact of termination is not itself an illegal act.... Here, respondents allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights. There were no other allegations, either in *Ricks* or in these cases, of illegal acts *subsequent to the date on which the decisions to terminate were made....* In the cases at bar, respondents were notified, when they received their [termination] letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed.

*Chardon,* 454 U.S. at 8, 102 S.Ct. at 29 (emphasis added).[4]

The case at bar is clearly distinguishable from *Ricks* and *Chardon.* In the present case, it is true that Defendants informed Plaintiffs of their terminations on April 7, 1989, more than two years prior to the date suit was filed. However, unlike the plaintiffs in the above-cited cases, Plaintiffs

---

**3.** Ricks' original suit was brought before the EEOC as a Title VII case. It became a civil rights suit when the EEOC granted Ricks a right-to-sue letter and he filed in the District Court under 42 U.S.C. § 1981.

**4.** Justices Brennan and Marshall dissented in the case, arguing that it is one thing when an employer informs an employee that he or she

will be terminated, and quite another for the employee to learn that he or she has been denied a right or benefit. According to the Justices, the former violates traditional legal principles. *Chardon,* 454 U.S. at 9, 102 S.Ct. at 29–30 (citing *Corbin on Contracts* ) (Brennan, J., dissenting).

here suffered most (if not all) of the alleged constitutional harm *after* the Defendants notified them of the layoffs. A Policy and Procedures manual governed the personnel decision and Plaintiffs received full grievance hearings well after the day they learned of the layoffs. In fact, if the decisions of the grievance panels had been upheld, this suit could not have been possible. It was not until the alleged actions of Defendants White and the Board during the months of August and September 1989 that the termination became official and the true harm occurred (i.e. lack of due process from Defendants White and the Board). The Plaintiffs do not allege a continuing violation, nor do they allege that the act of termination itself is the operative harm. Instead, they argue that had the Defendants accorded them their proper due process, they would still have jobs working for the Authority. Thus, the court's analysis today is legally consistent with *Ricks* and *Chardon.*

The above discussion squares nicely with the most recent Ninth Circuit decision on this topic. In *Hoesterey v. City of Cathedral City,* the plaintiff, a former Assistant City Manager, alleged in a § 1983 suit that his coerced resignation violated his due process rights. The District Court had ruled that the statute of limitations began to run on the day that one of the defendants had coerced and intimidated plaintiff into agreeing to leave his post and not on the date plaintiff actually left. The Ninth Circuit reversed. After discussing *Ricks* and *Chardon* the Court went on to say that since the plaintiff challenged the *process* and not just simply the *fact* of his termination, "to trigger the statute of limitations, Hoesterey needed to have received notice, *not only of the termination decision, but also that the decision was final* and that it would be followed by no further process." *Hoesterey,* 945 F.2d at 320.

Likewise, in the present case, Plaintiffs challenge the *process* by which their employment with the Authority ended. Spe-

cifically, they allege that proper procedures guaranteed them jobs under the reorganization. The events surrounding that claim took place well after April 12, 1989, and thus, the present suit is not time-barred.[5]

### C. *Jurisdiction Over the Pendent State Claims*

Since the court rules that none of Plaintiffs' claims should be dismissed on the basis of Defendants' first two arguments, this argument is rendered moot.

IT IS, THEREFORE, HEREBY ORDERED that Defendants' motion to dismiss (document # 8) is DENIED.

**5.** *See also Griffen v. Big Spring Indep. School Distr.,* 706 F.2d 645, 649 (5th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 525, 78 L.Ed.2d 709 (1983) (statute of limitations in civil rights em- ployment case held to run from day school board approved of teacher's dismissal, not on day he was informed that he would not be retained).