**James M. KULINSKI, Plaintiff,**

v.

**MEDTRONIC BIO–MEDICUS, INC., Defendant.**

**No. C5–97–942.**

Supreme Court of Minnesota.

April 16, 1998.

---

Mackall, Crounse & Moore, PLC, Stephen P. Kelley, Joanne H. Turner, Minneapolis, for Plaintiff.

Briggs & Morgan, Jeffrey J. Keyes, Jay W. Schlosser, Minneapolis, for Defendant.

## OPINION

TOMLJANOVICH, Justice.

On certification from the Eighth Circuit Court of Appeals, we are called upon to decide whether:

a plaintiff in the particular circumstances of this case, whose favorable verdict and judgment was vacated on appeal for lack of subject matter jurisdiction, [may] bring the same claim under a different legal theory

and be saved by the operation of Minnesota's savings statute[,] [Minn.Stat.] § 541.18, from the bar of the statute of limitations under Minn.Stat. § 541.07(5).

We answer the question in the affirmative.

The relevant facts are undisputed. In 1990, plaintiff James Kulinski was the national sales manager for defendant Medtronic Bio–Medicus, Inc. (then Bio–Medicus, Inc.) when it became a subsidiary of Medtronic, Inc. Prior to the merger, Kulinski signed two change-of-control termination agreements which provided Kulinski with certain severance benefits in the event of a takeover.

Just before the merger, Medtronic proposed a two-year contract under which Kulinski would continue as national sales manager of Medtronic Bio–Medicus ("Bio–Medicus"); however, the proposed salary represented a pay cut. After the merger, Bio–Medicus notified Kulinski that it would not honor either of the termination agreements, and Kulinski resigned. Bio–Medicus refused to pay Kulinski severance benefits pursuant to either of the termination agreements, on the ground that neither termination agreement was ratified properly by Bio–Medicus.

In February 1991, Kulinski sued Bio–Medicus in federal district court, asserting that the corporation's refusal to pay him severance under the termination agreement constituted a breach of an "employee welfare benefit plan" under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002(1). Kulinski alleged that the district court had federal question jurisdiction over the matter, see Fed.R.Civ.P. 8(a), and the district court agreed. After a short trial in August 1992, the district court held for Kulinski.

Holding that the termination agreements did not constitute ERISA "plans," the Eighth Circuit Court of Appeals dismissed the appeal, vacated the district court's judgment, and remanded the matter, directing the district court to dismiss Kulinski's complaint for lack of subject matter jurisdiction. *See Kulinski v. Medtronic Bio–Medicus, Inc.*, 21 F.3d 254, 258 (8th Cir.1994). Prior to the district court ruling, Kulinski attempted to amend the complaint to allege diversity jurisdiction and a breach of contract claim. However, the district court dismissed the complaint with prejudice and denied Kulinski's motions to vacate the dismissal and to amend the complaint. On appeal, the Eighth Circuit held that the district court did not abuse its discretion by refusing to allow Kulinski to amend the complaint or by dismissing the complaint.

After the district court dismissed the first complaint but before the Eighth Circuit affirmed the dismissal, Kulinski filed a second action in federal district court. In this complaint, Kulinski claimed that Bio–Medicus' refusal to pay severance benefits constituted a breach of contract. He alleged diversity of citizenship as a basis for the district court's jurisdiction.

In granting Bio–Medicus' motion to dismiss, the district court held that Kulinski's breach of contract claim was barred by the statute of limitations governing wage claims. *See* Minn.Stat. § 541.07(5) (1996). The district court found the "savings statute of limitations," Minn.Stat. § 541.18 (1996), inapplicable because Kulinski "assert[ed] a new claim" in the second action. Kulinski appealed the dismissal, and Bio–Medicus cross-appealed, asserting that the claim was barred by res judicata.[1] The Eighth Circuit panel reversed the dismissal but affirmed the district court on the cross-appeal, holding that section 541.18 saved the contract claim and that the contract claim was not precluded because it raised a different legal theory and jurisdictional basis than had the ERISA claim.

However, the Eighth Circuit panel subsequently granted Bio–Medicus' petition for rehearing and vacated its opinion. The panel reaffirmed the district court's rulings on the issues of res judicata and the applicable stat-

---

1. In addition to arguing that his contract claim was saved by Minn.Stat. § 541.18, Kulinski argued to the Eighth Circuit (as he had to the district court) that the statute of limitations governing wage claims did not apply to his claim and if it did, that the district court should have granted equitable relief from its application. The Eighth Circuit found no merit in the statute of limitations issue, and it did not reach the issue of equitable relief.

ute of limitations. However, the Eighth Circuit panel also certified to this court the question of whether Minnesota's savings statute, section 541.18, saved the contract claim from the applicable statute of limitations.

## I.

Most states have "savings" statutes—also known as "renewal" or "extension" statutes—which allow plaintiffs to bring new actions within a certain period of time when their original actions have "failed for some reason other than a decision on the merits," although the applicable statute of limitations has run. 51 Am.Jur.2d *Limitation of Actions* § 302 (1970). Minnesota's savings statute provides:

> Except where the uniform commercial code otherwise prescribes, if judgment be recovered by plaintiff in an action begun within the prescribed period of limitation and such judgment be afterward arrested or reversed on error or appeal, the plaintiff may begin a new action within one year after such reversal or arrest.

Minn.Stat. § 541.18. This measure was enacted in Minnesota's territorial days and has been amended only once in the intervening years. *See id.* (1961) (amended 1965).

The certified question raises two issues pertaining to section 541.18. First, this court must decide whether an action dismissed for lack of subject matter jurisdiction, after judgment for the plaintiff and at the direction of an appellate court, is "arrested or reversed on error or appeal." *Id.* (1996). The second, and more difficult, issue is whether claims brought in the "new action" must be based upon the same legal theory or theories raised in the original action in order to be "saved" by section 541.18. *See id.*

■ Because a certified question presents a matter of law, this court reviews it independently. *See Foley v. Honeywell, Inc.*, 488 N.W.2d 268, 270, (Minn.1992). Furthermore,

in interpreting a statute, "the object of this court is to ascertain and effectuate the intention of the legislature." *In re Butler*, 552 N.W.2d 226, 231 (Minn.1996) (citing Minn. Stat. § 645.16 (1994)).

## II.

Bio–Medicus asserts that section 541.18 cannot apply in this case because the judgment was vacated—not, as stated in the statute, "arrested or reversed."[2] Kulinski counters that the savings statute is remedial in nature and, thus, should be construed liberally in his favor.

Courts in other jurisdictions have cast a liberal eye upon similar savings statutes. *See, e.g., Vari v. Food Fair Stores*, 205 A.2d 529, 531 (Del.1964); *Liberace v. Conway*, 31 Mass.App.Ct. 40, 574 N.E.2d 1010, 1012 (1991); *Rowland v. Beauchamp*, 253 N.C. 231, 116 S.E.2d 720, 724 (1960); *Vale v. Ryan*, 809 S.W.2d 324, 326 (Tex.App.1991). As Justice Cardozo wrote, "The [savings] statute is designed to insure to the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction." *Gaines v. City of New York*, 215 N.Y. 533, 109 N.E. 594, 596 (1915).

■ The construction urged by Bio–Medicus would defeat the legislative purpose underlying section 541.18. Because a judgment entered by a court without subject matter jurisdiction is void *ab initio, see Lange v. Johnson*, 295 Minn. 320, 323, 204 N.W.2d 205, 208 (1973), a higher court cannot "reverse" it, in the strictest sense of that word. However, "reverse" plainly can be read to encompass the act of vacating a judgment, because a vacated judgment has the same practical effect as reversal. *See Gaines*, 109 N.E. at 596 (rejecting "extreme view" that action dismissed for lack of subject matter jurisdiction is nullity, on ground

---

**2.** The term "arrest of judgment" is somewhat archaic, at least in the civil context. *See* 46 Am.Jur.2d *Judgments* § 322 at 643 (1994) (explaining that originally defendants could not move for judgment notwithstanding the verdict; rather, they moved for arrest of judgment). The term refers to an act by the trial court. *See*

*United States v. Sisson*, 399 U.S. 267, 280–81, 90 S.Ct. 2117, 2125, 26 L.Ed.2d 608 (1970) ("An arrest of judgment [under common law] was the technical term describing the act of a trial judge refusing to enter judgment on the verdict because of an error appearing on the face of the record that rendered the judgment invalid.").

it "has at least some of the consequences of an action begun in a court of competent jurisdiction"); Black's Law Dictionary 1319 (6th ed.1990) (defining "reverse" as "[t]o * * * vacate"; stating that "[t]o reverse a judgment means to overthrow it by contrary decision, make it void, undo or annul it for error"); cf., e.g., *Pugsley v. Magerfleisch*, 161 Minn. 246, 247–48, 201 N.W. 323, 323–24 (1924) (reversing; holding that trial court was without personal jurisdiction to render judgment against nonresident defendant, that judgment therefore was void, and that trial court erred in denying motion to vacate judgment); *Park Elm Homeowner's Ass'n v. Mooney*, 398 N.W.2d 643, 647 (Minn.App. 1987) (holding that trial court exceeded its statutory authority in tampering with torrens title, in a manner "tantamount to granting a judgment without subject matter jurisdiction"; reversing and remanding with instructions to vacate portion of judgment adversely affecting title). Accordingly, we hold that a judgment for the plaintiff, vacated on appeal for lack of subject-matter jurisdiction, is "reversed" within the meaning of section 541.18.

## III.

Our next task is to determine whether the phrase, "a new action," encompasses only those actions that are based upon the same legal theories as were asserted in the original actions. Kulinski argues that a liberal construction of the savings statute would permit a different legal theory to be raised in a subsequent action, and he observes that the legislature could have limited, but did not limit, the statute's reach by using more restrictive language. *Cf., e.g.,* Mass. Ann. Laws ch. 260, § 32 (Law.Co-op.1992) (permitting a plaintiff to "commence a new action for the same cause within one year"); Tex. Civ. Prac. & Rem.Code Ann. § 16.064 (West 1997) (referring to "a second filing of the same action" in the event the first is dismissed for lack of jurisdiction).[3] Bio–Medicus maintains that the legislature intended section 541.18 to allow plaintiff a second opportunity to assert only the same claim(s) and only when judgment for the plaintiff is reversed on a "technicality."

We agree with Bio–Medicus that the savings statute should not be given an entirely literal reading.[4] However, of the few cases that do analyze the meaning of the word "action" within the context of various savings statutes, courts have tended to take the broader view that Kulinski espouses. The prevailing view is that savings statutes operate to save actions dismissed for lack of subject matter jurisdiction. *See, e.g., Diffley v. Allied–Signal, Inc.,* 921 F.2d 421, 425 (2d Cir.1990); *Liberace,* 574 N.E.2d at 1012; *Vale,* 809 S.W.2d at 327.[5] This interpretation

**3.** Kulinski correctly observes that the statutory definition of "action" does not apply to section 541.18, and he urges us to employ the common-law definition instead. However, we do not find the common-law definition to be particularly helpful to interpreting the savings statute. *See, e.g., Har–Mar, Inc. v. Thorsen & Thorshov, Inc.,* 300 Minn. 149, 152–53, 218 N.W.2d 751, 754 (1974) (quoting the common-law definition of "action" as "the prosecution in a court of justice of some demand or assertion of right by one person against another"); *see also* Minn.Stat. § 645.45(2) (1996) (defining "action" as "any proceeding in any court of this state").

**4.** Bio–Medicus contends it would be absurd for the court to interpret the statute to allow a plaintiff to bring *any* claim, regardless of its factual basis, within a year of an earlier judgment for the plaintiff being reversed on appeal. We agree that such a broad construction would render statutes of limitations meaningless in many instances. *See* Minn.Stat. § 645.17(1) (1996)(directing courts construing statutes to presume that the legislature did not intend an unreasonable or absurd result). However, it would be

ineffectual to restrict the statute's application to only those claims which are reversed on "technicalities," as Bio–Medicus suggests. We find no support either in the plain words of the statute or in case law for inferring such a limitation, and the term cannot be defined with any precision.

**5.** There are several exceptions to this general rule. Courts have refused to apply such statutes where the plaintiff willfully or negligently brought the original action in a court without jurisdiction, *see, e.g., White v. Tucker,* 53 Ill. App.3d 862, 11 Ill.Dec. 636, 369 N.E.2d 90, 94 (1977); where the court in which the original action was brought lacked personal jurisdiction over the defendant (by reason of the plaintiff's neglect), *see, e.g., Gifford v. Spehr,* 358 Mass. 658, 266 N.E.2d 657, 661–62 (1971); or where the plaintiff failed to comply with the savings statute's requirements in instituting the second action, *see, e.g., Markoff v. South Nassau Community Hosp.,* 61 N.Y.2d 283, 473 N.Y.S.2d 766, 461 N.E.2d 1253, 1255 (1984). Because none of these exceptions is implicated in this case, we need not decide today whether any of them should be read into Minnesota's savings statute.

accords with established principles of res judicata, precluding relitigation of causes of action or issues litigated in an earlier action in which final judgment was rendered on the merits. *See Hauser v. Mealey,* 263 N.W.2d 803, 806–09 (Minn.1978); *see also Muellenberg v. Joblinski,* 188 Minn. 398, 400, 247 N.W. 570, 572 (1933) ("A judgment of a court without jurisdiction of the subject matter or parties is not res judicata.").

In determining whether savings statutes apply, several courts have concluded that the form of the action is not dispositive, and we find their analysis persuasive. *See, e.g., Griffen v. Big Spring Indep. Sch. Dist.,* 706 F.2d 645, 652–53 (5th Cir.1983); *Chandler v. Denton,* 741 P.2d 855, 863–64 (Okla.1987); *cf. Howmet Corp. v. City of Wilmington,* 285 A.2d 423, 427 (Del.Super.Ct.1971).[6] The *Griffen* and *Chandler* courts found the essence of the initial and subsequent actions to be the same, and they employed liberal constructions in an effort to effectuate the remedial purposes of the savings statutes. In *Griffen,* the Fifth Circuit decided that the plaintiff's federal statutory cause of action was saved because it was brought "to vindicate the same rights" as the plaintiff's original action, an appeal from an administrative decision. *Griffen,* 706 F.2d at 652–53. In *Chandler,* the Oklahoma Supreme Court held that the savings statute preserved plaintiff's second action, which was based on new legal theories, because the defendant had notice of the factual setting from which the claims arose. *Chandler,* 741 P.2d at 863–64.

■ Because a savings statute represents an exception to statutes of limitations, we agree that a key to determining whether a subsequent action is saved is whether "by invoking judicial aid [in the original action], a litigant [has] give[n] timely notice to his adversary of a present purpose to maintain his rights before the courts." *Gaines,* 109 N.E. at 596; *cf. Finley v. Erickson,* 122 Minn. 235, 239, 142 N.W. 198, 199 (1913) ("A statute

of limitation is based to a great extent on the proposition that if one person has a claim against another, * * * it would be inequitable for him to assert such claim after an unreasonable lapse of time, during which such other has been permitted to rest in the belief that no such claim existed."). In this case, we find it significant that courts often employ contract principles in interpreting ERISA plan provisions because of the strong parallels between contract and ERISA claims. *See, e.g., Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1352–53 (8th Cir.1980). On an even more fundamental level, there can be no doubt that Bio–Medicus received notice, within the limitations period, of Kulinski's stance—i.e., the termination agreements bound Bio–Medicus to pay severance benefits to Kulinski in the event of a takeover and termination of his employment.

Bio–Medicus warns that such a broad reading of Minnesota's savings statute will lead to rampant claim-splitting. While claim-splitting is greatly disfavored, *see, e.g., Hauser,* 263 N.W.2d at 807, we think it quite unlikely that a plaintiff will be so foolhardy as to gamble upon recovering judgment and having it "arrested or reversed on error or appeal," by asserting only some of his or her potential claims. Moreover, as we noted above, the doctrine of res judicata operates as an additional constraint upon the application of section 541.18.

■ Accordingly, we hold that under the particular circumstances of this case, section 541.18 saves Kulinski's breach of contract action from the statute of limitations governing wage claims. We answer the certified question in the affirmative.

PAGE and GILBERT, JJ., took no part in the consideration or decision of this case.

---

**6.** Of the cases Kulinski cites in support of this proposition, none involved a second action that was based upon a different legal theory than the first. *See Gosnell v. Whetsel,* 198 A.2d 924, 925 (Del.1964); *Torres v. Parkview Foods,* 468 N.E.2d 580, 581 (Ind.Ct.App.1984). In fact, one of the cases suggests that the legal theories must be the

same in the two actions. *See Liberace,* 574 N.E.2d at 1013 (holding that "the statute of limitations ha[d] unqualifiedly run" on the plaintiff's husband's loss of consortium claim, which in the first action was included in the complaint but was deleted from the amended complaint).